INDEPENDENCE TUBE CORPORATION,
Plaintiff,

v.

COPPERWELD CORPORATION and Regal Tube Company, Defendants.

No. 76 C 4201.

United States District Court,
N. D. Illinois, E. D.

June 21, 1982.

Victor E. Grimm, John R. Myers, Scott M. Mendel, Bell, Boyd & Lloyd, Chicago, Ill., for plaintiff.

Stephen A. Milwid, Joseph E. Coughlin, Michael R. Hassan, William J. Tabor, Lord, Bissell & Brook, Chicago, Ill., for defendants.

## REVISED MEMORANDUM OPINION

WILL, District Judge.

After a ten-week, bifurcated trial, a judgment for $7,497,027.00 was entered against the defendants on the plaintiff's antitrust claim, trebling the jury's verdict of $2,499,099.00.[1] On June 22, 1981, we denied the defendants' motion for judgment notwithstanding the verdict or for a new trial.

The plaintiff has filed a petition for attorneys' fees under section 4 of the Clayton Antitrust Act. 15 U.S.C. § 15. The total requested is $1,668,202.55. That amount includes $1,337,402.25 for 17,781.25 hours spent by the plaintiffs' attorneys, both partners and associates; $55,473.75 for 1,749.75 hours spent by law students; $243,564.05 for 8,074.50 hours spent by legal assistants;

---

1. A judgment of $15,000.00 was also entered against defendant Regal only for commercial defamation and tortious interference with the plaintiff's relationship with Deere. After the liability trial in which the jury found defendant Yoder Co. guilty of breach of contract, the plaintiff settled with Yoder which is, therefore, no longer a party to this suit.

and $31,762.50 in fees of attorneys, students, and assistants for time spent preparing and litigating the petition for fees and the bill of costs. The plaintiff has also requested an upward adjustment of the award based on the nature of the litigation and the attorneys' skill as well as interest on the award. For the reasons hereinafter stated, the plaintiff is awarded attorneys' fees of $1,722,175.53 plus interest.[2]

The plaintiff has also filed a bill of costs, requesting $151,892.23. After the defendants filed objections, in accordance with the procedures in this district, our deputy clerk awarded the plaintiff costs of $129,610.10, the total of the amounts requested for deposition transcripts; witness fees and travel expenses; the plaintiff's expert witness fees and expenses; photocopying, charts, and photographs; and docket fees. The clerk disallowed the costs of the transcripts of court proceedings, the defendants' expert witness fees and expenses, and computerized research costs. The parties filed cross motions for review of the clerk's assessment. We held a hearing on October 15, 1981, to discuss with the parties the deficiencies both in the plaintiff's supporting documentation and in the defendants' objections which made it impossible to evaluate which costs should be taxed and which disallowed. At that time, we ordered the plaintiff to submit supplemental material in support of its bill of costs. The plaintiff filed an amended request for $92,791.55, and the defendants then filed further objections. For the reasons hereinafter stated, the clerk's order of June 22, 1981, is vacated, and the plaintiff is awarded costs of $92,497.17, plus interest.

## I. Attorneys' Fees

The accepted method for determining the amount of an award of attorneys' fees begins with the calculation of a so-called lodestar figure by multiplying the number of hours reasonably spent on the litigation by a reasonable hourly rate. That figure is then adjusted up or down depending on the quality of representation and, if a contingency representation, on the risk that the lawsuit might have been unsuccessful and no fee obtained. That method is the simplest and most precise way of considering the twelve generally accepted factors on which a fee award should be based: the time and labor required; the novelty and difficulty of the questions; the skill requisite to perform the legal services properly; the preclusion of other employment; the customary fee in the community for similar work; the fixed or contingent nature of the fee; time limitations imposed by the client or the circumstances; the amount involved and the result obtained; the experience, reputation, and ability of the attorneys; the desirability of the case; the nature and length of the professional relationship with the client; and awards in similar cases. *See generally, Copeland v. Marshall*, 641 F.2d 880 (D.C.Cir.1980) (en banc); *In re Folding Carton Antitrust Litigation*, 84 F.R.D. 245 (N.D.Ill.1979); American Bar Association Code of Professional Responsibility, Disciplinary Rule 2–106.

### A. The Time-Rate Analysis

#### 1. Hourly rates

■ The rates requested for the partners who worked for the plaintiff on this case range from $85 for the lowest rate for partners in 1976 to $140.00 for the highest rate for partners in 1981. The rates for associates range from $50.00 for the lowest rate in 1976 to $80.00 for the highest rate in 1981.

We find that the hourly rates requested for the plaintiff's attorneys is reasonable in light of the rates customarily charged in the locality and the experience, reputation, and ability of the plaintiff's lawyers. *Cf. In re Folding Carton Antitrust Litigation*, 84

---

**2.** In their first set of objections, the defendants requested a hearing. On October 15, 1981, we held a status hearing which, although not a formal hearing, provided an opportunity for discussion of the issues raised in the petition.

A more extensive hearing is not necessary in this case since a hearing is not an efficient manner to accomplish the minute analysis of time spent which the defendants argue is required.

F.R.D. 245, 265 (N.D.Ill.1979) ($150.00 maximum hourly rate for attorneys on the plaintiff class executive committee or senior attorneys who made particularly significant contributions to the litigation; $125.00 for committee chairmen and other middle and senior partners who made significant contributions; $75.00 for associates). The rates of the plaintiff's attorneys are comparable to those charged by the defendants' Chicago firm which range from $70.00 in 1976 to $143.00 in 1981 for partners and from $42.00 in 1976 to $98.00 in 1981 for associates.

### 2. Hours spent

(a)

The defendants contend that an unspecified amount of the time included in the plaintiff's petition cannot be awarded because it represents duplicative work by the plaintiff's attorneys, e.g., attendance by more than one attorney at depositions, motion and status calls, and court hearings. Duplication should not be paid for by the losing party but an item-by-item accounting in a case of any size is unreasonably burdensome. Other courts "have approved the arbitrary but essentially fair approach of simply deducting a small percentage of the total hours to eliminate duplication of services." *Northcross v. Board of Education,* 611 F.2d 624, 636–37 (6th Cir. 1979), *cert. denied,* 447 U.S. 911, 100 S.Ct. 3000, 64 L.Ed.2d 862 (1980). *See also Copeland v. Marshall,* 641 F.2d 880, 903 (D.C.Cir.1980) (en banc). *Cf. Prandini v. National Tea Co.,* 585 F.2d 47, 51 (3d Cir. 1978) (court held that, "[a]bsent evidence to support the district court's finding of duplication or overlap, we cannot sustain the 10% fee reduction imposed by the district court.")

■ From our observation of this case, we conclude that there was some unnecessary and, therefore, noncompensable duplication. On many occasions, two and even three counsel participated in proceedings which could have been handled by one. On the other hand, the magnitude of the case clearly required the services of a number of attorneys as evidenced by the teams of counsel employed by the defendants. In determining the award, we will reduce the total number of attorney hours requested by ten percent.

(b)

■ Although at one time the Seventh Circuit held that all time spent on a case is compensable even time spent on claims which the party seeking attorneys' fees lost, *see Sherkow v. Wisconsin,* 630 F.2d 498, 504–05 (7th Cir. 1980); *see also Northcross v. Board of Education,* 611 F.2d at 636, in its most recent opinions on this subject, the court of appeals has held that attorneys' fees can be awarded only for preparation and presentation of claims on which a party is successful. *Syvock v. Milwaukee Boiler Manufacturing Co.,* 665 F.2d 149 (7th Cir. 1981); *Busche v. Burkee,* 649 F.2d 509, 522 (7th Cir. 1981). *See also Muscare v. Quinn,* 614 F.2d 577 (7th Cir. 1980). Although these cases involved the Civil Rights Attorneys' Fees Act rather than the Clayton Act, there is no reason to interpret section 4 of the Clayton Act, which awards attorneys' fees to a plaintiff who establishes that he was "injured in his business or property," differently from section 1988 of the Civil Rights Act, which awards attorneys' fees to the "prevailing party." *Compare Busche v. Burkee,* 649 F.2d at 522 (section 1988) *with Baughman v. Wilson Freight Forwarding Co.,* 583 F.2d 1208, 1214 (3d Cir. 1978) (Clayton Act case in which fees were not awarded for hours spent on unsuccessful claims).

Moreover, although the Seventh Circuit has apparently never decided this issue, since it has held that time spent on unsuccessful claims should be distinguished from time spent on successful claims, it probably would also hold that fees should not be awarded for time spent on state law claims, even if those claims were successful, since there is no statutory authority for such an award. *See Baughman v. Wilson Freight Forwarding Co.,* 583 F.2d at 1215–16.

However, although no compensation should be paid for time spent litigating claims upon which the party seeking the fee did not ultimately prevail .... [i]t sometimes will be the case that a lawsuit will seek recovery under a variety of legal theories complaining of essentially the same injury. A district judge must take care not to reduce a fee award arbitrarily simply because a plaintiff did not prevail under one or more of these legal theories. No reduction in fee is appropriate where the "issue was all part and parcel of one matter," *Lamphere v. Brown Univ.*, 610 F.2d 46, 47 (1st Cir. 1979), but only when the claims asserted are "truly fractionable," *id.*

*Copeland v. Marshall*, 641 F.2d at 891–92 and n.18. Similarly, the calculation of time spent on successful claims "presumably includes time spent on unsuccessful claims to the extent such time would have been spent in connection with the successful claims even if the unsuccessful claims had not been brought." 649 F.2d at 522.

Furthermore, time spent on an issue on which a party failed to prevail but which was an aspect of a larger, successful claim, so that the failure affected only the amount of damages due for the claim on which he did succeed but did not affect the finding of liability, is compensable. *Syvock v. Milwaukee Boiler Manufacturing Co.*, 665 F.2d 149, 165 (7th Cir. 1981). In *Syvock*, the plaintiff had succeeded in his claim that the defendant had discriminated against him on the basis of age but failed to prove that he had mitigated his damages or that the defendant had acted willfully. The court held that all time spent on the age discrimination claim was compensable including time spent on the issues of mitigation and willfulness.

(c)

In count III of the complaint in this case, the plaintiff alleged that defendant Yoder Co. had breached a contract with the plaintiff to provide a mill, equipment, and tooling which the plaintiff would have used to manufacture structural steel tubing. The jury found for the plaintiff on the breach of contract claim. In count IV of the complaint, the plaintiff alleged that defendants Copperweld and Regal had tortiously interfered with the contract between Yoder and the plaintiff. The jury found against these defendants and for the plaintiff on the tortious interference claim. In count I of the complaint, the plaintiff alleged that Yoder's breach of the contract was part of a conspiracy between Yoder, Copperweld and Regal to prevent the plaintiff from entering the structural steel tubing market in violation of section 1 of the Sherman Act. The jury found against Copperweld and Regal on that issue but found that Yoder was not a part of the conspiracy. In support of its section 1 claim, the plaintiff attempted at trial to introduce evidence of functional discounts granted by the defendants to Ryerson. We excluded that evidence. The plaintiff also attempted to show that Copperweld and Regal had conspired in violation of the antitrust laws to interfere with the plaintiff's relationship with Deere Plow and Planter Works. The jury found that there was no conspiracy to interfere with the plaintiff's business relationship with Deere but that Regal alone did interfere with that relationship. Count V of the complaint alleged that the defendants libelled and slandered the plaintiff. The jury found that Regal, but not Copperweld, was liable for commercial defamation. Count II of the complaint stated a claim for monopolization, a violation of section 2 of the Sherman Act. That count was voluntarily dismissed before trial.

The defendants brought a counterclaim against the plaintiff and its president David Grohne. The counterclaim alleged that the plaintiff had engaged in a systematic plan to induce Regal employees to leave Regal's employment for the plaintiff's in order to obtain trade secrets and confidential information from Regal and to interfere with Regal's operations. At the conclusion of the trial, we directed a verdict on the counterclaim in favor of the plaintiff.

■ In their objections to the plaintiff's petition for attorneys' fees, the defendants argue that the plaintiff cannot receive attorneys' fees for time spent on state law claims—the plaintiff's defense of the counterclaim, the breach of contract claim, the claims involving Deere, and the tortious interference claim—and that the plaintiff cannot receive attorneys' fees for time spent on the unsuccessful antitrust claims— the claims of conspiracy relating to Deere and Ryerson, the monopolization claim, and the claim of a conspiracy with Yoder. We agree that time spent on those claims is not compensable unless the claims are not "truly fractionable" from the successful antitrust claim. *Lamphere v. Brown University*, 610 F.2d 46, at 47 (1st Cir. 1979).

(d)

■ Under the applicable legal standards, we conclude that the plaintiff is entitled to attorneys' fees for services performed in relation to the counterclaim, the contract claim, the tortious interference claim, the Yoder conspiracy claim, and the monopolization claim because time spent on those claims would have been spent in connection with the successful section 1 claim even if the other claims had not been brought. The defendants' counterclaim against Grohne and the plaintiff was identical to their defense against the plaintiff's section 1 claim: the defendants argued that Grohne's alleged use of trade secrets and inducement of employees both made him liable to the defendants under state law and justified their activities which the plaintiff was claiming violated section 1, thus relieving them from liability under the antitrust laws. Even if the plaintiff had not had to defend the counterclaim, the plaintiff's attorneys would have had to perform the same services to counter the defendants' defense to the section 1 claim. Therefore, time spent on the counterclaim is also compensable.

The defendants argue that the breach of contract claim is separate from the antitrust claim because Copperweld and Regal did not defend the antitrust claim on the

theory that there was no contract between Yoder and Independence. This is not totally accurate since they did contend that certain conditions precedent to a contract had not been met. In any event, much of the dispute in the breach of contract suit involved the reason Yoder did not deliver the mill, whether it was a result of pressure by Copperweld and Regal or whether it was due to other factors which had no antitrust implications. Those issues are indistinguishable from the issues in the antitrust claim. Although the plaintiff may not have had to prove the existence of a contract if the breach of contract claim had not been brought, since most of the time spent on the contract claim was directly relevant to the antitrust claim, and since the parsing of compensable from noncompensable time would be an impossible task, fees for most of the time spent on the contract claim will be awarded. The only exceptions are the 60.5 hours spent on the jury instructions relating to the breach of contract claim and the 71.75 hours spent on the Yoder settlement since those relate solely to the contract claim against Yoder.

Similarly, time spent attempting to prove that Yoder was part of the conspiracy will not be excluded from the fee award. All the issues which are a part of that claim— e.g., the contacts between the various defendants, the timing of and the relationship between the various events leading to Yoder's breach of the contract—were as much a part of the antitrust case against Copperweld and Regal as they were part of the case against Yoder.

Although the defendants argue that "significant efforts involved in research, briefing, discovery and trial time" related solely to the tortious interference with the Yoder contract claim, they have not identified how many hours they contend were spent solely on that claim nor given any examples of activity which would not have been performed by the plaintiff's attorneys if only the antitrust claim and not the state law claim had been brought. To prove its anti-

trust claim, the plaintiff proved, among other things, a tortious interference with the Yoder contract and then proved a conspiracy. The tortious interference claim, therefore, is "part and parcel" of the antitrust claim, and time spent thereon will be included in the fee award.

Time spent on the plaintiff's withdrawn monopolization claim is also compensable. One of the defendants' defenses to the section 1 claim was that, since they did not have a near-dominant share of the market, even if they had used unfair means to keep the plaintiff out of the market, they did not create the risk of a monopoly and, therefore, there was no unreasonable restraint of trade. Although we rejected that theory at trial, until that time, the plaintiff could not be certain that we would exclude the defendants' evidence of market share and had to be ready to counter that defense by proving that the defendants had a large market share. Since that could only be established by doing the same discovery and preparation that would be done to prove a monopolization claim, time spent on the withdrawn monopoly claim is compensable.

The defendants argue that time spent on what they characterize as "market issues for 1975 and 1976" should not be awarded. The plaintiff introduced evidence on the condition of the structural steel tubing market to show restraint of trade. The defendants retort several times that the evidence was rejected by the jury because the jury "specifically found" that the conspiracy ended by 1975. That statement is incorrect. None of the interrogatories answered by the jury contained any dates or asked the jury to find when the conspiracy ended, although the jury did find that certain acts after 1975 were undertaken by Regal alone. Even if the jury had made such a finding, however, the evidence of market structure in 1975 and 1976 was part of the plaintiff's proof of its claim of an antitrust violation in 1974. The restraint of trade and the damages suffered by the plaintiff did not necessarily end when the plaintiff entered the market in 1974 since the delay in its entry had repercussions well after the time it began operation. The size of the jury's verdict clearly implies that it found the effects of the defendants' illegal activity went beyond the nine months in which the plaintiff was excluded from the market.

Time spent on the Deere claim and the Ryerson issue, however, is not compensable. In *Syvock v. Milwaukee Boiler Manufacturing Co.*, 665 F.2d 149 (7th Cir. 1981), the court distinguished between cases in which a party loses only an aspect of a claim so that all time spent on a claim is compensable, and cases in which a party contends that several different actions of the defendants violated the law and in which the party fails to prove that all of the actions were illegal so that only time spent on the successful portions of the case is included in the fee award. At 165. Although the plaintiff argues that its allegations relating to Deere and Ryerson were only aspects of its claim that the defendants violated section 1 by conspiring to keep the plaintiff out of the market, the case does not arise, as the plaintiff argues, from one set of facts, and the claims relating to Deere and Ryerson are not simply different theories of recovery based on the same facts as the successful antitrust claim which related to the tortious interference with the Yoder contract. Although all were contained within count I of the complaint, the plaintiff's theory was that any one of the acts of the defendants violated the antitrust laws. Since the plaintiff failed to prove that the defendants' acts with respect to Ryerson were a restraint of trade or that defendant Regal's acts with respect to Deere were done in conspiracy with Copperweld, time spent on those aspects of the case cannot be included in the antitrust fee award. The plaintiff identifies 176.25 attorney hours and 105 legal assistant hours spent on those claims.

The defendants make several miscellaneous objections. They object to including time spent on two motions which were never filed. Although these motions apparently related to issues in the case with respect to which the plaintiff can recover attorneys'

fees, the time is not compensable since the motions were never filed. On the other hand, the plaintiff's research involving the motion to disqualify one of its attorneys is related to the suit as a whole and therefore to the successful antitrust claim, and the plaintiff can receive attorneys' fees for that time. Accordingly, 10.50 hours spent on the unfiled motions will be eliminated. The defendants have noted that 1.25 hours included in the petition were spent at a court appearance in another, unrelated case. That time will also not be included in the award.

The defendants object to any fee award for time spent on the plaintiff's damages claim. Their argument that this work is not legal work, however, is frivolous. Although economic calculations are not legal work, the plaintiff's attorneys apparently left that to their experts and spent the time included in the fee petition gathering information to submit to the expert for analysis and preparing the experts' conclusions for presentation to the jury. Those tasks are clearly part of a lawyer's responsibility.

The defendants also argue that time spent on damages should not be awarded because the plaintiff sought total single damages of $8,298,240.00 but received single damages of only $2,499,009.00. That discrepancy might justify reducing the number of hours awarded but it could not justify eliminating that time from the award altogether; the time was productive in part in that the jury did award substantial damages. Furthermore, the time is compensable under the rule announced by the Seventh Circuit in *Syvock v. Milwaukee Boiler Mfg. Co.*, 665 F.2d 149 (7th Cir. 1981), in that whatever part of the plaintiff's damages claim the jury rejected was an aspect of the larger, successful damages claim and the rejection only affected the amount of damages not the finding that the defendants were liable or that the plaintiff had suffered some damages. It is inevitable that a plaintiff will endeavor to prove the largest possible damages. The amount of

time to which the defendants object (2038.-75 hours) is not unreasonably large in light of the complexity of proving what damages were caused by the plaintiff's exclusion from the market and will be included in the fee award. Since that amount does include some unsuccessful effort, however, it will be excluded from the amount to which a multiplier is applied. *See* discussion, *infra*.

The defendants also object to time spent in depositions on noncompensable subjects. Since we have rejected most of their objections regarding which subjects are noncompensable, we will not subtract any additional time for depositions.

■ Finally, the defendants object to thousands of hours which they claim are not explained in a way which indicates sufficiently the nature of the task on which the time was spent. The defendants, however, do not identify which hours they object to on that ground. Without more specific objections, the plaintiff cannot supply more documentation, and we cannot determine the validity of the argument. We believe it reasonable to place the onus of an item-by-item examination of the plaintiff's time records on the defendants not the court, with the court perusing the records identified in the defendants' objections. In this case, since the defendants have not provided us with sufficient evidence of their objections, we will not subtract any time for entries which the defendants allege they cannot decipher.

## B. Adjustment

■ Whether an award of attorneys' fees should be in an amount above—or below—the lodestar depends on the contingent nature of compensation in the particular case, the complexity of the issues and the quality of the attorneys' representation. *Lindy Brothers Builders, Inc. v. American Radiator & Standard Sanitary Corp.*, 540 F.2d 102, 117 (3d Cir. 1976). The factors con-

sidered in evaluating the contingent nature of success are the plaintiff's burden, the risk assumed in developing the case, and the delay in receipt of payment. *Id.*[3] An adjustment due to the quality of representation must be made on the basis of a finding that the attorneys' performances were not just good or competent but exceptional and evidenced an unusual degree of skill. *Id.* The quality determination involves a comparison of the potential recovery to the actual recovery and an evaluation of the attorneys' methods of efficient or obstruction tactics. *Id.*

We will apply a multiplier of 1.2 to a portion of the plaintiff's attorneys' fees. The plaintiff's attorneys showed considerable skill in handling this case. The case was complex, and the defendants complicated it by raising a wide variety of issues and a number of novel theories, all of which the plaintiff successfully refuted. We note particularly the defendants' invocation of the so-called "Noerr-Pennington" doctrine to argue that some of their activities were related to their preparation of a possible lawsuit and were therefore protected by the first amendment.[4]

C. Fee Petition and Bill of Costs

■ The defendants object to that amount of the fee petition which represents time spent preparing the plaintiff's petition for fees and bill of costs and the various memoranda the plaintiff has filed in support of the petition and bill of costs. Fees for services performed in connection with the fee application are awarded in civil

rights suits. *Johnson v. State of Mississippi,* 606 F.2d 635 (5th Cir. 1979); *Gagne v. Maher,* 594 F.2d 336 (2d Cir. 1979), *aff'd,* 448 U.S. 122, 100 S.Ct. 2570, 65 L.Ed.2d 653 (1980); *Weisenberger v. Huecker,* 593 F.2d 49 (6th Cir.), *cert. denied,* 444 U.S. 880, 100 S.Ct. 170, 62 L.Ed.2d 110 (1979); *Prandini v. National Tea Co.,* 585 F.2d 47 (3d Cir. 1978); *Lund v. Affleck,* 587 F.2d 75 (1st Cir. 1978); *Hairston v. R & R Apartments,* 510 F.2d 1090 (7th Cir. 1975). The rationale for such an award is that

> [i]f an attorney is required to expend time litigating his fee claim, yet may not be compensated for that time, the attorney's effective rate for all the hours expended on the case will be correspondingly decreased. Recognizing this fact, attorneys may become wary about taking Title VII cases, civil rights cases, *or other cases for which attorneys' fees are statutorily authorized.* Such a result would not comport with the purpose behind most statutory fee authorizations, *viz,* the encouragement of attorneys to represent indigent clients and to act as private attorneys general in vindicating congressional policies.

*Prandini v. National Tea Co.,* 585 F.2d at 53 [emphasis added]. In *Pitchford Scientific Instruments Corp. v. Pepi, Inc.,* 440 F.Supp. 1175, 1179 (W.D.Pa.1977), *aff'd,* 582 F.2d 1275 (1978), *cert. denied,* 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 242 (1979), the court, without discussion, made such an award in an antitrust case.

The cases cited by the defendants in support of their argument that such an award

---

**3.** In connection with the plaintiff's request for an additional amount above the lodestar, the defendants requested a copy of any fee arrangements between the plaintiff and its attorneys prior to the agreement presently in effect and already produced by the plaintiff. The plaintiff objected to that request and submitted the document for our *in camera* inspection. After examining the documents, we find that it is irrelevant and need not be produced.

**4.** The plaintiff requested a multiplier in part due to the protracted nature of the litigation caused by the obstructionist tactics of the defendants. That factor, however, is already reflected in the number of hours billed and awarded. Time spent overcoming, *e.g.,* the defendants' discovery obstacles involved routine legal services which required no exceptional skill and cannot justify a multiplier. Our award of a multiplier, therefore, is not based on that ground.

should not be made, *City of Detroit v. Grinnell Corp.*, 560 F.2d 1093, 1102 (2d Cir. 1977); *Lindy Brothers Builders, Inc. v. American Radiator*, 540 F.2d 102, 111 (3d Cir. 1976), are distinguishable. In those cases, the attorneys were entitled to fees not because of a statutory provision but under the equitable fund theory. That theory provides "that an attorney whose actions have conferred a benefit upon a given group or class of litigants may file a claim for reasonable compensation for his efforts." *City of Detroit v. Grinnell*, 560 F.2d at 1098. Time spent on efforts to obtain a fee in those cases benefited the attorneys exclusively and did not increase, protect, or preserve the fund. Under the equitable fund theory, the attorneys were not, therefore, entitled to fees for those efforts. 560 F.2d at 1102; *Lindy Brothers Builders, Inc. v. American Radiators*, 540 F.2d at 111. Furthermore, since the attorneys' fees award would have been made in those cases from the settlement fund set up for the class members, awarding fees for time spent in obtaining fees would have depleted the settlement fund. However, "[s]tatutorily authorized fees are not paid out of the plaintiffs' recovery, and the attorney in seeking his fee is not acting in any sense adversely to the plaintiff's interest." *Prandini v. National Tea*, 585 F.2d at 53.

Although the rationale which supports the decision to award fees for this time in civil rights cases is not as compelling in antitrust cases, the considerations remain persuasive. It may be less difficult to procure representation in most antitrust cases than it is in civil rights cases, but the provision for attorneys' fees in the Clayton Act reflects a congressional intent to provide the same encouragement to bring suits under the antitrust laws as under the civil rights acts. That similarity supports similar interpretations of the respective attorneys' fees statutes. Furthermore, although the treble damages provision might offset some of the harm caused by allowing these hours to go uncompensated, the deterrent effect of treble damages is diluted if that remedy is used to justify a restricted interpretation of the attorneys' fee provision. A multiplier, *see* discussion, *supra*, however, will not be applied to these hours.

### D. Interest on Attorneys' Fees and Costs

■ The plaintiff has requested interest on attorneys' fees and costs awarded to it. In *Capra, Inc. v. Ward Foods, Inc.*, 567 F.2d 1316 (5th Cir. 1978), the court held that interest is not payable on attorneys' fees in antitrust cases because the Clayton Act makes attorneys' fees part of the court costs and interest is not payable on court costs, and because the treble damage award makes interest on attorneys' fees less necessary than in cases where treble damages are not awarded. 567 F.2d 1322. *Cf., Gates v. Collier*, 616 F.2d 1268 (5th Cir. 1980) (interest payable on attorneys' fees in civil rights cases). Other courts, however, albeit without discussion, have allowed payment of interest on costs and attorneys' fees in antitrust cases, *Mt. Hood Stages, Inc. v. The Greyhound Corp.*, 616 F.2d 394, 406 n.10 (9th Cir. 1980); *City of Detroit v. Grinnell Corp.*, 575 F.2d 1009, 1010 (2d Cir. 1979); *Perkins v. Standard Oil Co. of California*, 487 F.2d 672 (9th Cir. 1973). Furthermore, unlike the Fifth Circuit, the Seventh Circuit apparently does allow interest on costs. *See Harris v. Chicago Great Western Ry.*, 197 F.2d 829, 836 (7th Cir. 1952). Therefore, even if attorneys' fees are considered part of the costs rather than part of the judgment, interest on fees is appropriate. Although the tripling of the damage award may make interest on fees less necessary, the punitive nature of treble damages is undermined when these damages are considered part compensation for delay in payment of attorneys' fees. The defendants must pay interest on the award of fees and costs from the date it is entered.

E. Conclusion

| | |
|---|---|
| $1,337,402.25 | (request for attorneys' time) |
| − 19,521.25 | (noncompensable time; *see* appendix I) |
| 1,317,881.00 | |
| − 131,788.10 | (10% reduction for duplication) |
| 1,186,092.90 | |
| − 143,212.48 | (fees for time spent on damages; not subject to multiplier; *see* appendix II) |
| 1,042,880.42 | |
| x 1.2 | (multiplier) |
| 1,251,456.50 | |
| + 143,212.48 | (fees for time spent on damages) |
| 1,394,668.98 | |
| + 55,473.75 | (fees for law students) |
| 1,450,142.73 | |
| + 240,270.30 | (fees for legal assistants; *see* appendix III) |
| 1,690,413.03 | |
| + 31,762.50 | (all fees for time spent on petition for attorneys' fees and bill of costs) |
| 1,722,175.53 | |

## II. Bill of Costs

### A. Court Reporter—Depositions

▮▮▮▮ Costs may be taxed under section 1920 for "[f]ees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case." 28 U.S.C. § 1920(2). If a deposition appeared to be reasonably necessary "in light of the particular situation existing at the time it was taken," *Dorothy K. Winston & Co. v. Town Heights Development, Inc.*, 68 F.R.D. 431, 434 (D.D.C.1975), the cost of a deposition may be taxed even if the witness was not called at trial or the deposition used at trial and even if the deposition was a discovery deposition only. *SCA Services, Inc. v. Lucky Stores*, 599 F.2d 178, 180 (7th Cir. 1979); *Fey v. Walston & Co.*, 493 F.2d 1036, 1056 (7th Cir. 1974). The cost of a deposition is not taxable, however, if the deposition was not within the proper bounds of discovery or was unduly prolonged. *Federal Savings and Loan Insurance Corp. v. Szarabajka*, 330 F.Supp. 1202, 1210 (N.D.Ill.1971). The losing party's objections to the taxation of depositions or parts of deposition must be specific. *Id.*

Since the plaintiff's original bill of costs and invoices in this case did not contain enough information to evaluate whether all of the eighty-six depositions transcribed for the plaintiff were reasonably necessary, pursuant to our order at the status hearing in October, the plaintiff supplemented its bill of costs with a list of the deposition witnesses, the employment of each witness for the years involved in the lawsuit, a description of the subjects covered in each deposition, and the cost of each deposition. The total amount of the request for deposition transcripts was $62,105.78. The defendants objected to the requests for the entire cost of ten depositions and to the requests for part of the cost of eight depositions. The total amount objected to is $14,403.24. A total of $47,702.54 for the cost of deposition transcripts is not objected to by the defendants.

Seven of the ten depositions which the defendants now argue should not have been taken at all were depositions of people listed by the defendants as potential trial witnesses in the Final Pretrial Order, although none were called at the trial. The plaintiff acted reasonably in taking the depositions of anyone identified by the defendants as trial witnesses and in having those depositions transcribed. Moreover, even if those depositions were taken before the Final Pretrial Order was prepared, the defend-

ants' subsequent inclusion of those names in that order indicates that, contrary to the defendants' present argument, the information those people had on the subject matter of this suit was not so irrelevant or so unimportant that their depositions were outside the bounds of discovery. The costs of the depositions of Barber, Pia, Jordanoff, Stroomer, Curto, Wasz and McLean, therefore, will be awarded. The total cost for those seven depositions was $5,588.42.

The defendants object to the request for the cost of Louis A. Ruble's deposition. According to the defendants, Ruble's deposition was taken immediately prior to his testimony at the trial, and the transcript of the deposition was not available for use at the trial. The $113.00 requested for Ruble's deposition, therefore is disallowed.

The defendants argue that only twenty percent of the cost of Theodore K. Eckhardt's deposition should be taxed. Eckhardt was the manager of defendant Yoder's Chicago sales office during the events which gave rise to this lawsuit. He testified twice at the trial. The defendants claim that thirty percent of the cost of his deposition should be disallowed because it was spent on "extraneous" matters "such as the early negotiations between Grohne [the plaintiff's president] and Yoder, technical aspects of the Yoder mill, and the production capacities of other tube mill manufacturers." Copperweld's Supplemental Memorandum in Opposition to Independence's Request for Reimbursement of Certain Costs, p. 8. That type of background information, however, was an appropriate subject for a deposition in this case and is not outside the bounds of discovery. The defendants also argue that fifty percent of the cost of Eckhardt's deposition should be disallowed because, although the subject matter was discoverable, "Eckhardt's examination was unnecessarily prolonged and repetitive. Eckhardt's deposition is some three hundred pages longer than William Waters' deposition and nearly twice as long as Douglas Yoder's deposition. As the court may recall, Waters and Yoder were far more important as witnesses in this case

than Mr. Eckhardt." *Id.* That comparison is meaningless, however, and does not prove that Eckhardt's deposition was unduly prolonged. There are many explanations for the length of Eckhardt's deposition: it covered more subjects than either Waters' or Yoder's; the subjects were covered with appropriate though detailed and extensive examination; and there were numerous objections of defense counsel. Since the defendants concede that the subject matter covered was within the bounds of discovery and have not shown that the deposition was unnecessarily long, the total amount for Eckhardt's deposition will be awarded.

██ The defendants' remaining objections are made on two grounds. First, the defendants object to requests for the cost of any part of a deposition which did not relate to any issue presented at trial. Specifically, the defendants argue that the plaintiff cannot recover costs attributable to questions regarding functional discounts since we held at trial that evidence of functional discounts was irrelevant, or costs attributable to questions relating to the plaintiff's monopolization claim since that count of the complaint was dismissed before the trial began. The defendants' objection, however, is not sufficient. The standard for awarding the cost of depositions is not whether the deposition was related to an issue presented at trial but whether it was related to an issue which was present in the case at the time the deposition was taken. These depositions were taken before the monopoly claim was dismissed and before our trial ruling on the issue of functional discounts, *i.e.*, when those issues were still part of the case. Depositions or portions of depositions which relate to those issues, therefore, were "reasonably necessary," and those costs are proper under section 1920(2).

██ The defendants' second objection is to the request for the cost of depositions or parts of depositions where the witnesses could not answer the particular questions asked, or the witnesses' answers were not helpful to the plaintiff, or the witnesses were not called at trial. That is an adequate objection, however, only if the plain-

tiff should have known before taking the deposition or asking the questions that the witnesses would not have any useful information. All of the witnesses deposed by the plaintiff were employed in positions in companies which were involved in the subject matter of this suit. It was not unreasonable, therefore, for the plaintiff to think that they might have some knowledge relevant to the suit and to depose them.

Insofar as the defendants' objection relates to only parts of a deposition, they are apparently arguing that upon discovering that the witness did not know anything about a particular topic, it was unreasonable for the plaintiff to have those portions of the deposition covering that topic transcribed. That argument, however, imposes upon the court reporter and the plaintiff the impossible task of deciding and designating which portions of the deposition should be transcribed and which should not be. Since some portions of the deposition, by the defendants' admission, should have been transcribed, it was not unreasonable for the plaintiff to have the entire deposition transcribed without distinction between the useful and useless portions.

The defendants object to the entire cost of the transcript of Clay on the ground that he did not have any relevant knowledge. If the deposition was useless, the plaintiff should not have had it transcribed, and we will disallow the entire cost of Clay's deposition. ($64.00)

The plaintiff will be awarded $61,928.78 for the cost of deposition transcripts.

### B. Court Reporter—Court Proceedings

The plaintiff requested $3,750.00 for 7500 pages of trial proceedings which were transcribed at the regular transcription rate. That amount will be taxed: even if the transcript was not reasonably necessary for use during the trial itself, the transcript was essential for use by the plaintiff in responding to the defendants' post-trial motions.

The plaintiff also requested $5,626.80 for 3,216 pages of trial transcript billed at the higher rate for expedited daily copy. When deciding whether to tax the additional cost of daily transcripts, courts consider several factors: the length of the trial and the complexity of the issues, *Advance Business Systems & Supply Co. v. SCM Corp.*, 287 F.Supp. 143, 163 (D.Md.1968), *aff'd*, 415 F.2d 55 (4th Cir. 1969), *cert. denied*, 397 U.S. 920, 90 S.Ct. 928, 25 L.Ed.2d 101 (1970); *Kaiser Industries Corp. v. McLouth Steel Corp.*, 50 F.R.D. 5 (E.D.Mich.1970); *cf. Farmer v. Arabian American Oil Co.*, 379 U.S. 227, 234, 85 S.Ct. 411, 415, 13 L.Ed.2d 248 (1964) (cost of daily transcript disallowed based on district court's personal knowledge that this was not a complicated or extended trial where lawyers were requested to submit briefs and proposed findings); "whether a daily transcript was necessary to minimize disagreement over the testimony of witnesses, and whether proposed findings of fact were required," *Advance Business Systems*, 287 F.Supp. at 163; whether the case "involved expert witnesses whose cross-examination required knowledge of the exact wording of their previous testimony or that of any other witness," *United Rubber, Cork, Linoleum & Plastic Workers of America, AFL–CIO v. Lee National Corp.*, 62 F.R.D. 194, 196 (S.D.N.Y. 1974); the size of the claim, and the importance of witness credibility. *Galella v. Onassis*, 487 F.2d 986, 999 n.22 (2d Cir. 1973).

At the hearing in October, the defendants agreed to pay the expedited rate for half of the pages which the plaintiff received at that rate (1608 × 1.75 = $2,814.00). The plaintiff agreed to an award of the other half at the regular rate (1608 × .50 = $804.00).

■ Finally, the plaintiff requested $500.35 for transcripts of pretrial proceedings. In determining whether the cost of transcripts of pretrial hearings should be taxed,

the Court must consider both the length and complexity of the whole case and

what transpired at the hearings for which [plaintiff] seeks the costs of transcripts. If the proceedings were devoted to limiting and clarifying the issues which were to be heard at a lengthy trial and if such proceedings were of a magnitude that a transcript was needed to determine how the trial would proceed, then a transcript would of course be justified. However if these pretrial hearings did not greatly clarify the trial issues and if their substance could have been determined from the Court's orders and memoranda, then the plaintiff is not entitled to the costs of transcripts of them.

*Sperry Rand Corp. v. A–T–O, Inc.*, 58 F.R.D. 132, 138 (E.D.Va.1973). *See also Independent Iron Works, Inc. v. United States Steel Corp.*, 322 F.2d 656, 678 (9th Cir.), *cert. denied*, 375 U.S. 922, 84 S.Ct. 267, 11 L.Ed.2d 165 (1963). In view of the length, complexity, and importance of the pretrial proceedings in this case, the $500.35 requested is reasonable and will be taxed against the defendants.

The plaintiff, therefore, is awarded $4,554.00 for trial transcripts at the daily rate; $2,814.00 for trial transcripts at the expedited rate; and $500.35 for the transcripts of pretrial hearings. The total award for the cost of the transcripts of court proceedings is $7,868.35.

### C. Expert Witness Fees and Expenses

■ Section 1920 specifically provides that "[f]ees and disbursements for . . . witnesses" may be taxed. The defendants argue, however, that fees for expert witnesses should not be taxed in this case because expert witnesses were not reasonably necessary to the plaintiff's case. Two of the plaintiff's experts testified about the damages caused to the plaintiff by the defendants' exclusion of plaintiff from the structural steel tubing market; one expert testified about the capabilities of the Yoder mill by examining the blueprints and specifications. All of this testimony was necessary to enable the plaintiff to prove its case on damages, *i.e.*, to prove what the plaintiff would have been able to earn if the defend-

ants had not acted tortiously, the Yoder mill had been delivered and the plaintiff had been able to enter the market. Most of the information and analysis given by the experts was not within the limits of common sense or experience, so a jury, comprised of nonexperts, could not have intelligently addressed the issues without expert opinion as a basis for its consideration. Presumably, the defendants would have objected if the plaintiff had solicited this type of opinion from nonexpert witnesses. The plaintiff would have been foolhardy to present a complex case such as this to the jury without any expert opinion, particularly since the defendants called four experts. Expert witnesses, therefore, were essential in the plaintiff's case, and fees and expenses may be awarded as costs.

The defendants also argue that the fees for the plaintiff's expert Albert Madansky should not be taxed because the jury "completely repudiated his overblown damages theories." Although the jury award was less than the amount suggested by Madansky, his testimony was not necessarily useless to the jury. Since the Court was not the trier of fact, we do not know that Madansky was not helpful even if the jury disagreed with him in part. Defendants' argument, therefore, does not justify disallowing an award of fees for Madansky.

The plaintiff also requests reimbursement for the fees paid to the defendants' experts for the time the plaintiff spent deposing them and for their travel expenses. These experts were called by the defendants at trial, and the plaintiff's counsel used the depositions before and at trial to prepare for cross examination, to impeach the witnesses, and to refresh recollection. The defendants suggest, however, that the depositions of the defense experts were unnecessary since the plaintiff should have discovered the experts' opinions by using interrogatories. That argument exaggerates the usefulness of the latter device, which is designed to identify discreet information or sources of information not to elicit opinions on complex issues where the detailed cross examination allowed by deposition is imper-

ative. Since the plaintiff's depositions of the defendants' experts were necessary for use in the case, the appropriate costs should be taxed against the defendants.

 However, although the plaintiff can recover fees and expenses for expert witnesses in this case, it "may recover as costs of suit for expert witnesses only the amounts specified in 28 U.S.C. § 1821." *State of Illinois v. Sangamo Construction Co.*, 657 F.2d 855, 865–66, and n.12 (7th Cir. 1981). *See also Henkel v. Chicago, St. Paul M & O Ry.*, 284 U.S. 444, 52 S.Ct. 223, 76 L.Ed. 386 (1932); *Fey v. Walston & Co.*, 493 F.2d 1036 (7th Cir. 1974).[5] Under section 1821, a witness can be paid $30.00 per day for each day's attendance at deposition or trial, or time spent going to and returning from the deposition or trial. 28 U.S.C. § 1821(b). Therefore, the correct measure for taxing fees for expert witnesses is not the amount the expert charged the plaintiff, nor is time spent by an expert consulting with attorneys or preparing to testify taxable. Furthermore, under section 1821, the taxable expenses of a witness are actual travel expenses if travel is by common carrier at the most economical rate reasonably available, 28 U.S.C. § 1821(c)(1) or the mileage allowance prescribed for federal government employees if travel is by privately-owned vehicle, 28 U.S.C. § 1821(c)(2); charges for taxis and other miscellaneous expenses, 28 U.S.C. § 1821(c)(3); and a subsistence allowance when an overnight stay is required, not to exceed the maximum per diem for federal government employees. 28 U.S.C. § 1821(d). The amount taxable is the amount actually paid or the statutorily-defined amount, whichever is less.

 After we held at the hearing in October that we would apply the standards of *State of Illinois v. Sangamo Construction* in this case, the plaintiff altered its request

for expert witness fees and travel expenses to comply with that decision. The plaintiff reduced its request to $1,142.00 from $42,-676.59. The defendants' only objection to the lower figure is that it includes a fee for two days in which an expert attended the trial and consulted with the plaintiff's counsel but did not testify. Those costs are not recoverable, 657 F.2d at 867 n.15, and the plaintiff's request will be reduced by $60.00. The plaintiff, therefore, will be awarded $1,082.00 for expert witness fees and expenses.

D. Witness Fees and Travel Expenses

 In its supplement to the bill of costs, the plaintiff reduced its request for costs for witness fees and travel expenses to $2,832.66 from $4,787.20. That request includes $1,313.00 for fees and expenses of several trial witnesses who were outside the subpoena power of this Court. At the hearing in October, we held, over the defendants' objection, that the plaintiff could be reimbursed for those fees and expenses, within the statutory limitations. Such an award is within the discretion of the trial court, *Farmer v. Arabian American Oil Co.*, 379 U.S. 227, 232, 85 S.Ct. 411, 415, 13 L.Ed.2d 248 (1964), and depends upon the relevancy and materiality of the witnesses' testimony and, for trial witnesses, the importance of presenting live testimony rather than reading depositions at the trial. *See Marcoin, Inc. v. Edwin K. Williams & Co.*, 88 F.R.D. 588, 591 (E.D.Va.1980); *Dorothy K. Winston & Co. v. Town Heights Development, Inc.*, 68 F.R.D. 431, 433 (D.D. C.1975). We found that the testimony of Foster, Deichmann, and Ayers was important to the presentation of this case and that, in this trial as in most trials, the live testimony was far preferable.

Although, to reflect the statutory limitations on an award for such expenses, the plaintiff reduced its request for costs of

---

**5.** The court in *Sangamo* stated that fees and expenses above the statutory limits can be awarded in "exceptional circumstances." 657 F.2d at 865 n.14. The court, however, did not define the exceptional circumstances which might justify such an award nor has the plain-

tiff identified any present in this case. Since there is nothing that distinguishes this case from other antitrust cases in which expert witnesses are called, we will not award costs above the statutory limits.

witnesses beyond our subpoena power, the defendants object to part of the reduced request. According to the defendants, the request includes charges for the federal per diem rate even though the plaintiff did not pay expenses equal to or exceeding that amount but paid $57.38 less than the federal per diem rate. Under those circumstances, the plaintiff's request will be further reduced by $57.38.

■ The plaintiff's supplemental request for witness fees and expenses includes $1,484.36 for twelve witnesses who were deposed but were not called at trial and for two witnesses who were subpoenaed by the plaintiff to appear at the trial but who were not called by the plaintiff.[6] Since those depositions were reasonably necessary, see discussion on costs for transcripts of depositions, *supra,* and since the amounts requested are within the statutory limitations for witness fees and expenses, the amounts requested for witness fees and expenses for witnesses deposed but not called at trial are taxable.

■ If a witness is subpoenaed to appear at trial in good faith, the costs may be taxed even if the witness does not actually testify. *Christian v. Tackett,* 86 F.R.D. 220, 222 (N.D.Miss.1979). In this case, the witnesses were subpoenaed by the plaintiff to testify in the plaintiff's defense of the defendants' counterclaim. The plaintiff could not have known which witnesses would be necessary for that defense until the defendants as counterplaintiffs presented their case. *See id. See also Dasher v. Mutual Life Insurance Co. of New York,* 78 F.R.D. 142, 144 (S.D.Ga.1978). Since the testimony of these two witnesses may have been necessary had the defendants' presentation of the counterclaim progressed differently,[7] the plaintiff subpoenaed them in good faith,

and costs within the statutory limitation are taxable.

The defendants objected to the plaintiff's original request for $1,521.00 paid by the plaintiff to Welded Tube Co. According to the plaintiff, Welded Tube insisted that the plaintiff pay the cost of locating and copying documents requested by a subpoena, and the plaintiff paid the amount rather than litigate the issue. We held at the hearing in October that the plaintiff could recover the costs of copying the documents and the witness fee and travel expenses but not the finding fee. In its supplement to the bill of costs, the plaintiff states that the witness fee was $21.00 and the copying charges for the Welded Tube materials were $14.30 (143 pages at $.10 a page). The plaintiff, therefore, can be reimbursed for $35.30, paid to Welded Tube.

The plaintiff is entitled to an award of $2,775.28 for witness fees and expenses.

#### E. Photocopying, Charts, Photographs

■ Section 1920 allows the court to tax as costs "[f]ees for exemplification and copies of papers necessarily obtained for use in the case." 28 U.S.C. § 1920(4). Photocopying charges attributable to discovery and the court's copies of pleadings, motions and memoranda are "reasonably necessary for use in the case" and can be awarded. Extra copies of filed papers and correspondence, and copies of cases, however, are not necessary but are for the convenience of the attorneys and therefore not taxable.

■ The proper test for taxing the cost of charts, photographs and similar items is not whether they were used at trial, but whether they were necessary to an understanding of an issue and a material aid to the jury; costs of demonstrative materials which were merely illustrative of expert

---

**6.** At the hearing in October, the plaintiff agreed to exclude from its amended request the fees and costs of one witness subpoenaed but not actually called.

**7.** The plaintiff subpoenaed one witness to testify about the confidentiality of documents which the defendants alleged were unlawfully taken by Grohne. This testimony became un-

necessary when we excluded the documents at trial. The plaintiff decided that the second witness' testimony, which would have been about employees who left Regal during the time the defendants alleged that Grohne was inducing them to join the plaintiff, was unnecessary after the defendants presented their evidence.

testimony, other adequate evidence, or argumentative matter are not taxable. *Advance Business Systems & Supply Co. v. SCM Corp.*, 287 F.Supp. 143, 164 n.9 (D.Md. 1968), *aff'd*, 415 F.2d 55 (4th Cir. 1969), *cert. denied*, 397 U.S. 920, 90 S.Ct. 928, 25 L.Ed.2d 101 (1970) (The cost of materials to accompany testimony is taxable "only if their preparation was 'necessary in order to have the court understand what may otherwise have been on the record, but what would have been incomprehensible to the inexpert mind.'"); *Esler v. Safeway Stores, Inc.*, 77 F.R.D. 479, 483 (W.D.Mo.1978); *Mikel v. Keer*, 64 F.R.D. 93, 95 (E.D.Okla. 1973), *aff'd*, 499 F.2d 1178 (10th Cir. 1974); *Rowland v. Kitchens*, 63 F.R.D. 385, 388 (N.D.Miss.1974); *Hill v. Gonzalez*, 53 F.R.D. 1 (D.Minn.1971); *Kaiser Industries Corp. v. McLouth Steel Corp.*, 50 F.R.D. 5 (E.D.Mich. 1970); 6 Moore's Federal Practice, ¶ 54.-77[6]. At the hearing in October, after we described the standards we would apply in taxing the costs for photocopying, charts, and photographs, the parties agreed that the defendants would reimburse the plaintiff for one-half of those costs ($13,458.43).

### F. Computerized Legal Research

■ Although the cost of computerized legal research is not on the list of taxable costs in section 1920, "a district court retains limited discretion under Rule 54(d) to award as costs of suit expenses not specifically allowed by statute . . . ." *State of Illinois v. Sangamo Construction Co.*, 657 F.2d at 864 n.11. The use of computer aides in research is "reasonable, if not essential, in contemporary legal practice," *Wehr v. Burroughs Corp.*, 619 F.2d 276, 285 (3d Cir. 1980), and "replaces by instantaneous and supposedly infallible retrieval, many hours which would be billable if performed by human talent." *Pitchford Scientific Instruments Corp. v. Pepi, Inc.*, 440 F.Supp. 1175, 1178 (W.D.Pa.1977), *aff'd*, 582 F.2d 1275 (3d Cir. 1978), *cert. denied*, 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 242 (1979). Even without a specific showing of cost effectiveness in this case, therefore, an award of such costs is appropriate, and, based on the list of the subjects researched, which is contained in the plaintiff's supplement to its bill of costs, $5,093.33 is a reasonable amount.

### G. Docket Fees

The plaintiff is entitled to be awarded docket fees of $291.00.

### H. Conclusion

For the reasons stated above, the plaintiff is awarded the following costs:

| | |
|---|---|
| (1) Court Reporter—depositions | $61,928.78 |
| (2) Court Reporter—court proceedings | 7,868.35 |
| (3) Expert Witness Fees and Expenses | 1,082.00 |
| (4) Witness Fees and Travel Expenses | 2,775.28 |
| (5) Photocopying, Charts, Photographs | 13,458.43 |
| (6) Computerized Legal Research | 5,093.33 |
| (7) Docket Fees | 291.00 |
| | $92,497.17 |

## CONCLUSION

■ For the reasons stated above, the plaintiff is awarded attorneys' fees of $1,722,175.53 plus interest from the date hereof; the order of June 22, 1981 is vacated; and costs of $92,497.17 plus interest from the date hereof are taxed against the defendants.[8]

Appendix I—Noncompensable attorney hours

A. Jury instructions on the contract claim

| | | |
|---|---|---|
| Associate hours | 60.50 x $45.00 = | $ 2,722.50 |

B. Yoder settlement

| | | |
|---|---|---|
| Associate hours | 60.50 x $70.00 = 4,235.00 | |
| Partner hours | 11.25 x 110.00 = 1,237.50 | |
| | | $ 5,472.50 |

**8.** This Revised Memorandum Opinion replaces the Memorandum Opinion on the subject of fees and costs previously filed on January 19, 1982.

C. Ryerson issue

| Associate hours | |
|---|---|
| | 7.00 x $55.00 = 385.00 |
| | 43.25 x $60.00 = 2,595.00 |
| | 28.50 x $70.00 = 1,995.00 |
| Partner hours | 3.00 x 100.00 = 300.00 |

$ 5,275.00

D. Deere issue

| Associate hours | |
|---|---|
| | 6.75 x $50.00 = 337.50 |
| | 19.50 x $60.00 = 1,170.00 |
| | 32.00 x $70.00 = 2,240.00 |
| | 16.00 x $75.00 = 1,200.00 |
| | 4.00 x $80.00 = 320.00 |

$ 5,267.50

E. Unfiled motion and appearance in other case

| Associate hours | |
|---|---|
| | 6.25 x $55.00 = 343.75 |
| | 5.50 x $80.00 = 440.00 |

$ 783.75

$19,521.25

Appendix II—Time spent on damages

| Associate hours | 1399.25 x $ 66.84 = $ 93,525.87 |
|---|---|
| Partner hours | 36.75 x $117.65 = $ 4,323.64 |
| Other * | 602.75 x $ 75.26 = $ 45,362.97 |

$143,212.48

* For time spent on damages for which we could not determine the applicable hourly rate, we used the average rate for the plaintiff's attorneys of $75.26.

Appendix III—Noncompensable legal assistant hours

| Amount requested | | $243,564.05 |
|---|---|---|
| Ryerson issue | | |
| | 48.50 x $30.00 = $1,455.00 | |
| | 2.25 x $35.00 = 78.75 | |
| Deere issue | | |
| | 27.75 x $30.00 = 832.50 | |
| | 26.50 x $35.00 = 927.50 | |

− 3,293.75

$240,270.30