**UNITED STATES of America, Plaintiff-Appellee,**

v.

**STANDARD OIL COMPANY OF CALIFORNIA, Defendant-Appellant.**

No. 77–2144.

United States Court of Appeals, Ninth Circuit.

Aug. 27, 1979.

---

Noble K. Gregory, Pillsbury, Madison & Sutro, San Francisco, Cal., for defendant-appellant.

Barry Grossman, Robert J. Wiggers, Dept. of Justice, Washington, D. C., for plaintiff-appellee.

* Honorable William P. Gray, United States District Judge, Central District of California, sitting by designation.

Before HUFSTEDLER and GOODWIN, Circuit Judges, and GRAY,* District Judge.

HUFSTEDLER, Circuit Judge:

Standard Oil Company of California ("SOCAL") filed a Rule 60 motion to set aside an antitrust judgment against it for claimed fraud on the court. SOCAL lost the motion, and the district court imposed $88,253.52 attorney's fees and costs upon SOCAL on the ground that SOCAL had filed the motion "vexatiously and for oppressive reasons." The district court did not find any bad faith on the part of SOCAL in filing or prosecuting the motion, and the Government does not contend that any bad faith was involved. SOCAL's conduct did not come within the very narrow exceptions to the American rule preventing an award of attorney's fees to the successful party in absence of a statute or enforceable contract. Accordingly, we reverse.[1]

The lengthy history of this case begins in 1969, when the Government brought an antitrust action against SOCAL charging it with violating section 3 of the Sherman Act by conspiring unreasonably to restrain and monopolize the distribution and sale of petroleum products in American Samoa. The district court awarded judgment to the Government. (*United States v. Standard Oil Co. v. Cal.* (N.D.Cal.1972) 362 F.Supp. 1331.) The Supreme Court summarily affirmed the judgment on appeal. (*Standard Oil Co. of Cal. v. United States* (1973) 412 U.S. 924, 93 S.Ct. 2750, 37 L.Ed.2d 152.) We shall hereafter refer to this case as the "Government case." In June, 1976, SOCAL filed in the Supreme Court a motion to recall the mandate and to grant leave to the district court to set aside its judgment for fraud on the court. SOCAL claimed that documents had been improperly withheld by two witnesses and by the Department of Justice which affected the Government

1. The district court's findings are reported. (*United States v. Standard Oil Co. of Cal.* (N.D. Cal.1977) 73 F.R.D. 612.)

case. SOCAL asserted that, based on the testimony of Raymond Turnbull, an agent of William R. McCook, there was "at least a *prima facie* case of suppression by the Department of Justice which warrants a hearing in the District Court." The Supreme Court held that the district court could proceed without leave, and it dismissed the motion. (*Standard Oil Co. of Cal. v. United States* (1976) 429 U.S. 17, 97 S.Ct. 31, 50 L.Ed.2d 21.) Thereupon SOCAL brought its Rule 60 motion, which resulted in the order from which this appeal is taken.

In the Government's action, the district court had found that McCook, among others, had been foreclosed from the American Samoan market by SOCAL's violation of the Sherman Act. In 1974, McCook brought a treble damage action under section 4 of the Clayton Act, and he moved for summary judgment on the liability issue, relying upon the findings and judgment in the Government case. Although the district court denied summary judgment early in 1975, it held that the judgment in the Government case was *prima facie* evidence against SOCAL. (*McCook v. Standard Oil Co. of Cal.* (C.D.Cal.1975) 393 F.Supp. 256.) We shall hereafter refer to the private antitrust suit as the "McCook case."

During the course of discovery for the McCook case, SOCAL uncovered about 78 documents that it had repeatedly requested, without success, during the discovery and trial phases of the Government case. When SOCAL took Turnbull's deposition, Turnbull testified that he had made those documents available to the Government at the time SOCAL had requested them during the discovery phase of the Government case. Also during the course of discovery in the McCook case, SOCAL discovered that the Government had received 14 of the 78 undisclosed documents after the close of trial of the Government case. The Government did not disclose the latter-day acquisition to SOCAL.

When SOCAL received this information, it tried to obtain from the Government, McCook, Turnbull, and others, internal notes and correspondence relating to their preparation of the Government case. The McCook district court held that the documents sought from the Government were either privileged or were not relevant to the treble damage action. The district court did not rule on the question whether anyone had suppressed evidence during the Government case, nor did the court rule on the claim of privilege with respect to the other documents claimed to have been suppressed.

During the course of an evidentiary hearing on SOCAL's Rule 60 motion, McCook testified, consistently with his testimony at his earlier deposition, that he had given all but two of the documents in question to his lawyer during the Government case. The two documents that he had found after the Government case was over had been misfiled in a correspondence file. McCook's lawyer, Lynn, testified that he had collected documents from McCook and Turnbull primarily to forward them to another firm of private attorneys. He had not either reviewed or analyzed them, and he was surprised that new documents had appeared. Turnbull had earlier testified that all the documents that he had were given by him to the Government. Lynn said that he relied on Turnbull's representations and that he made no independent examination of Turnbull's office files. Turnbull's recollection of which documents he had given to whom and when was shown to be unreliable. Testimony was offered at the hearing on the Rule 60 motion that Turnbull had suffered a substantial loss of memory during the preceding five years for which he had been receiving medication. Other evidence produced at the hearing, which need not be detailed here, convincingly demonstrated that the failure to produce the documents requested by SOCAL during the Government case was the result of misfiling, inadvertence, and failures of recollection, all of which are not uncommon in complex litigation involving numerous documents.

The district court appropriately concluded that no one had deliberately suppressed any of the documents and that the Government was not guilty of any kind of wrongdoing.

The court further found that none of the documents provided information that was new or exculpatory and that SOCAL had produced no proof of a *prima facie* case of fraud on the court nor of any prejudice to it from the unavailability of the documents. Finally, the district court found that SOCAL should have known that its motion was insubstantial. It concluded that SOCAL had "brought this motion vexatiously and for oppressive reasons," and upon this basis awarded the Government attorney's fees and expenses incurred in defense of the motion as costs. (*United States v. Standard Oil Co. of Cal., supra*, 73 F.R.D. 613, 619.)

Contrary to the English practice, the American rule since 1796 has been that, in the absence of a statute or an enforceable contract, the prevailing litigant is not entitled to collect attorney's fees from the loser, with a few narrowly circumscribed judicially-created exceptions. (*Alyeska Pipeline Service Co. v. Wilderness Society* (1975) 421 U.S. 240, 257–60, 95 S.Ct. 1612, 44 L.Ed.2d 141; *Fleischmann Distilling Corp. v. Maier Brewing Co.* (1967) 386 U.S. 714, 717–19, 87 S.Ct. 1404, 18 L.Ed.2d 475.) Although "Congress has not repudiated the judicially fashioned exceptions to the general rule against allowing substantial attorneys' fees; . . . neither has it retracted, repealed, or modified the limitations on taxable fees contained in the 1853 statute and its successors. Nor has it extended any roving authority to the Judiciary to allow counsel fees as costs or otherwise whenever the courts might deem them warranted." (*Alyeska Pipeline Service Co. v. Wilderness Society, supra*, 421 U.S. at 260, 95 S.Ct. at 1623 (footnote omitted).)

No contract is involved in this case, and no statute authorizes the imposition of attorney's fees.[2] The sole authority which is arguably applicable,[3] and the one upon which the district court relied, is the very narrow exception that permits a federal court to "award counsel fees to a successful party when his opponent has acted 'in bad faith, vexatiously, wantonly, or for oppressive reasons.'" (*Hall v. Cole* (1973) 412 U.S. 1, 5, 93 S.Ct. 1943, 1946, 36 L.Ed.2d 702.)[4] The award of attorney's fees in such situations is punitive, and the penalty can be imposed "only in exceptional cases and for dominating reasons of justice." (6 J. Moore, Federal Practice ¶ 54.77[2], pp. 1709–10 (2d ed. 1972).)

The description of persons against whom a court, exercising its inherent equitable power, can impose attorney's fees, almost always includes, in addition to those persons who acted in bad faith, persons who acted "vexatiously, wantonly, or for oppressive reasons." We have been unable to find a single case of this kind in which a court has imposed attorney's fees on a losing party who did not act in bad faith, unless the relationship of the parties prior to litigation

**2.** Rule 11 of the Federal Rules of Civil Procedure provides no authority for awarding attorney's fees against an unsuccessful litigant. The rule provides that the attorney's signature on a pleading certifies that "to the best of his knowledge, information, and belief there is good ground to support it; and that it is not interposed for delay. . . . For a wilful violation of this rule, an attorney may be subjected to appropriate disciplinary action." The rule says nothing about disciplining a party by imposing attorney's fees upon him for any act of his lawyer, even if his lawyer willfully violated Rule 11.

**3.** The Government suggests that authority to award attorney's fees as taxable costs also arises in suits in equity "where gross charges of fraud have been made and not sustained," citing *Guardian Trust Co. v. Kansas City Southern Railway* (8th Cir. 1928) 28 F.2d 233.

In quoting this dictum, the Government fails to note that such authority is limited to instances in which " 'the main ground of the suit is shown to be false, unjust, vexatious, wanton or oppressive. In other words, where charges amounting to scandal and a misuse of the courts are made and not sustained, but found to be baseless and unwarrantable.' " (*Id.* at 234.) The Supreme Court overturned *Guardian Trust Co.* (*Kansas City Southern Railway Co. v. Guardian Trust Co.* (1930) 281 U.S. 1, 50 S.Ct. 194, 74 L.Ed. 659) with an opinion that gave no comfort to persons seeking an expansive reading of the inherent powers of the court of equity to award attorney's fees as costs.

**4.** *E. g., Nemeroff v. Abelson* (S.D.N.Y.1979) 469 F.Supp. 630 applies the principle to award attorney's fees against a plaintiff who acted in bad faith.

involved elements of trust and confidence, some kind of contract, or other legal relationship out of which the litigation arose. (*Rolax v. Atlantic Coastline R. R.* (4th Cir. 1951) 186 F.2d 473 (labor union, in violation of its duty of fair representation, forced black members to litigate to defend themselves from union's blatant racial discrimination); *Niday v. Graef* (9th Cir. 1922) 279 F. 941 (attorney's fees awarded against family lawyer in suit to recover property obtained by lawyer from his elderly client in breach of confidential relationship); *McEnteggart v. Cataldo* (1st Cir. 1971) 451 F.2d 1109 (attorney's fees assessed against college board of trustees for forcing professor to vindicate constitutionally secured right). *See also* 6 J. Moore, Federal Practice, *op. cit., supra,* ¶ 54.77[2], pp. 1704–12.) In litigation between strangers, "the underlying rationale of 'fee shifting' is, of course, punitive, and the essential element in triggering the award of fees is therefore the existence of 'bad faith' on the part of the unsuccessful litigant." (*Hall v. Cole, supra,* 412 U.S. at 5, 93 S.Ct. at 1946.)

 For the purposes of this litigation, SOCAL and the Government were strangers; SOCAL did not act in bad faith in bringing the Rule 60 motion. Although SOCAL's invocation of the processes of the court under Rule 60 was unsuccessful, we cannot characterize the motion as an abuse of the processes of the court. SOCAL's motion was no more vexing nor oppressive to the Government than other kinds of litigation in which the prevailing party is accused of some kind of misconduct or wrongdoing. Accordingly, the order cannot be sustained.

REVERSED.