SYUFY ENTERPRISES, Plaintiff,

v.

AMERICAN MULTICINEMA, INC., AMC
Film Management, Inc., and Dur-
wood, Inc., Defendants.

No. C–79–3052 WHO.

United States District Court,
N.D. California.

Dec. 7, 1983.

Michael N. Khourie, Joel Linzler, Mark J. Le Hocky, Khourie & Crew, San Francisco, Cal., for plaintiff.

Robert C. Hackett, Mohr, Hackett, Pederson, Blakley & Randolph, P.C., Phoenix, Ariz., for AMC Film.

Benjamin H. Parkinson, Ackerman, Johnston, Campbell & Parkinson, San Francisco, Cal., Alan K. Benjamin, Hoskins, King, McGannon, Hahn & Hurwitz, Kansas City, Mo., for defendants.

## MEMORANDUM OPINION AND ORDER

ORRICK, District Judge.

This is an action for damages and injunctive relief under federal and state antitrust laws and state tort law brought by plaintiff/counterdefendant, Syufy Enterprises ("Syufy"), against defendants/counterplaintiffs American Multicinema, Inc. and its related entities ("AMC") in which each charged the other with monopolizing, attempting to monopolize, and conspiring to restrain, trade in the exhibition of first-run films in San Jose, California.[1] Following a five-week trial, a jury returned verdicts for defendants and against plaintiff on the allegations of the complaint, and for defendants and against plaintiff in the amount of $1,006,410 (before trebling) on the allegations of the counterclaim. The Court entered judgment on these verdicts on February 11, 1982, and denied plaintiff's motion for judgment *non obstante veredicto* in a written opinion filed on July 28, 1982, 555 F.Supp. 418. Defendants' counsel, Benjamin H. Parkinson, Robert C. Hackett, and Alan K. Benjamin, and their respective firms, now come before the Court seeking $652,369.75 in attorneys' fees. For the reasons set forth below, the Court finds that defense counsel are entitled to a reasonable fee award of $425,-103.40 for their services in this lawsuit.

---

1. Plaintiff filed its complaint on October 31, 1979, pursuant to the Sherman Act, 15 U.S.C. §§ 1 and 2 (count one), the California Cartwright Act, Cal.Bus. & Prof.Code §§ 16600 *et seq.* and 16720 *et seq.*, and the California Unfair Practices Act, Cal.Bus. & Prof.Code §§ 17000 *et seq.* (count two), and state tort law (intentional interference with prospective business advantage) (count three). The gravamen of the complaint was that, commencing in April 1973, defendants conspired with unspecified individuals or entities to restrain trade in the exhibition of first-run films in Santa Clara County and to monopolize the relevant market through conduct violative of Sections 1 and 2 of the Sherman Act and certain policies and provisions of state law.

Defendants filed their counterclaim on November 26, 1979, for violations of Sections 1 and 2 of the Sherman Act and Section 3 of the Clayton Act, 15 U.S.C. § 14. Defendants alleged that plaintiff had at all relevant times possessed monopoly power in both the indoor and drive-in film exhibition markets in the San Jose zone of Santa Clara County, and that plaintiff used its monopoly power and conspired with various distributors and exhibitors to restrain trade and eliminate competitors.

I

Section 4 of the Clayton Act, 15 U.S.C. § 15, permits the successful plaintiff in a private antitrust action to recover reasonable attorney's fees as part of his costs of suit:

"[A]ny person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States in the district in which the defendant resides * * * and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee."

■ The purpose of the attorney's fee provision is to insulate treble damage recovery from expenditures for legal fees, consonant with Section 4's general purpose of encouraging private individuals to undertake enforcement of the antitrust laws. *Twin City Sportservice v. Charles O. Finley & Co.*, 676 F.2d 1291, 1312 (9th Cir. 1982); *Perkins v. Standard Oil Co.*, 474 F.2d 549, 553 (9th Cir.1973). A reasonable award of attorney's fees is a mandatory part of the successful Section 4 claimant's recovery. *Twin City Sportservice, supra.*

■ The Ninth Circuit has sanctioned the use of a "blend" of two overlapping analyses—the *Lindy* approach and the *Kerr* approach—to determine "reasonable" fees under the Clayton Act. *Moore v. James H. Mathews & Co.*, 682 F.2d 830, 840–41 (9th Cir.1982). *See also In re Capital Underwriters Securities Litigation,* 519 F.Supp. 92 (N.D.Cal.1981). Under this blend of analyses, the Court first must determine for each of defendants' attor-

neys a "lodestar" figure, based on the number of hours legitimately expended and adequately documented by counsel in preparation for the suit, multiplied by a reasonable hourly billing rate. *See Lindy Brothers Builders of Philadelphia v. American Radiator & Standard Sanitary Corp.*, 487 F.2d 161, 167–69 (3d Cir.1973) *following remand* 540 F.2d 102, 112–18 (1976). Next, the Court must consider enhancing or decreasing the lodestar figure in light of the particular case. *See Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir.1975).[2]

■ The instant case presents unusual circumstances complicating the calculation of reasonable fees under these analyses: defendants concurrently recovered treble damages for antitrust violations on their counterclaim *and* successfully refuted the allegations of plaintiff's complaint. While it is clear that an award of attorney's fees will lie in favor of a defendant who successfully *prosecutes* a counterclaim sounding in antitrust, *North American Soccer League v. National Football League*, 505 F.Supp. 659, 691 (S.D.N.Y.1980) (hereinafter cited as "*NASL*") citing *Locklin v. Day-Glo Color Corp.*, 429 F.2d 873 (7th Cir.1970), it is equally clear that the prevailing defendant in a private antitrust suit ordinarily is *not* entitled to attorney's fees for successfully *resisting* the plaintiff's claims. *Byram Concretanks, Inc. v. Warren Concrete Products Co.*, 374 F.2d 649, 651 (3d Cir.1967); *NASL, supra; Juneau Square Corp. v. First Western National Bank of Milwaukee*, 435 F.Supp. 1307, 1327 (E.D. Wis.1977).[3] Accordingly, the threshold

---

2. These factors consist of the following: (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstance; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

3. The rationale underlying this latter principle is twofold. First, the pertinent provision of the Clayton Act requires success on an *affirmative claim*, as a condition precedent to the award of attorney's fees; the provision does not expressly authorize the award of fees for services in defense of a claim. *North American Soccer League v. National Football League,* 505 F.Supp. 659, 691 (S.D.N.Y.1980); 15 U.S.C. § 15. In the absence of such express statutory authority, the "American" rule of fee awards precludes the prevailing party in a suit from recovering a reasonable attorney's fee from the loser. *Alyeska Pipeline Service Co. v. Wilderness Society,* 421

question here is what proportion of the total fees incurred by defendants is attributable at least in part to the prosecution of the counterclaim,[4] and what proportion is attributable solely to the defense of the claim.

Defense counsel *estimate* that they spent 5494.86 hours prosecuting the counterclaim and 2328.25 hours defending the complaint. Although they did maintain contemporaneous time records during the course of this litigation, defense counsel did not record separately time spent on the counterclaim and time spent on the complaint. In the absence of separate time records, they derived the above estimates by dividing the services they performed during the litigation into five to eight categories;[5] allocating time expenditures among these categories on the basis of their memories, the type of work specified on the time record, and the stage of the litigation; and further allocating time within these categories between the claim and counterclaim.

Plaintiff does not contest the *total* number of hours defense counsel claim was expended by them during the course of the litigation. Plaintiff does, however, vigorously contest the method used by defendants to allocate hours between the claim and counterclaim, and the estimates derived therefrom. Plaintiff argues that defense counsel overestimate the proportion of hours spent on the counterclaim to hours spent on the claim, and that their estimates are entirely too speculative and lacking in proper factual foundation to support the award requested. Plaintiff further argues quite correctly that there is no excuse for such speculation, because defense counsel are experienced antitrust lawyers who should have been aware of the need to record separately time spent on the counterclaim.

Faced with this unhappy situation, defendants propose two alternative theories on which they claim they are entitled to all of the fees requested, including those incurred in defense of plaintiff's complaint: (1) defendants were obliged to overcome (*i.e.*, successfully defend) Syufy's claims in order to prevail on the counterclaim; and (2) Syufy's complaint constituted "vexatious litigation" in defense of which the prevailing defendants are entitled to attorneys' fees. The Court considers each of these contentions in turn.

## A

Defendants submit that much of the evidence adduced at trial by both parties fo-

U.S. 240, 247, 95 S.Ct. 1612, 1616, 44 L.Ed.2d 141 (1975). Second, awarding attorneys' fees to successful antitrust defendants would defeat the policy considerations reflected in the Clayton Act; the incentive that the prospect of treble damages provides for instituting private antitrust actions would be dampened by the threat of assessment of defendant's attorney's fees and other costs as a penalty for failure. *Byram Concretanks, Inc. v. Warren Concrete Products Co.*, 374 F.2d 649, 651 (3d Cir.1967); *Juneau Square Corp. v. First Western National Bank of Milwaukee*, 435 F.Supp. 1307, 1327 (E.D.Wisc. 1977).

4. The Court finds that services undertaken only partially in support of the counterclaim nevertheless are fully compensable under Section 4 of the Clayton Act. Such services would have been performed to some extent even if the counterclaim had been filed in a separate lawsuit; nothing in the fee award cases suggests that a fee claimant or the Court must determine the precise degree to which counsel's services aided in the successful recovery of antitrust damages. A liberal construction of Section 4 is consistent with its purpose—to encourage private enforcement of the antitrust laws—and with recent Ninth Circuit decisions concerning similar divided efforts by prevailing counsel. *See, e.g., Twin City Sportservice v. Charles O. Finley & Co.*, 676 F.2d 1291, 1313 (9th Cir.1982) (authorizing award of fees for prosecuting both successful and unsuccessful claims to recover antitrust damages).

5. The categories into which each firm divided its services are as follows: (1) *the Parkinson firm*—court appearances; preparation, review, and editing of documents; examination of records; subpoenas/depositions; procedural arrangements; jury; research and advice; post trial; (2) *the Hackett firm*—discovery; pleadings, summary, document, and memoranda preparation; legal research; trial preparation; court appearances; conferences with clients; and (3) *the Benjamin firm*—documents; depositions; court appearances; conferring with clients and witnesses; conferring with counsel.

cused on the losses sustained at AMC's Oakridge and Saratoga theatres. AMC argued at trial that the losses arose from Syufy's anticompetitive behavior in the San Jose film exhibition market. Syufy in turn argued that the losses were a product of AMC's predatory or "kamikaze" bidding in the market, financed by a "national treasury," by which AMC pushed the price of leasing first-run films far beyond the means of its competitors. Based on these arguments at trial, defendants contend herein that AMC's counterclaim was the "flipside" of Syufy's complaint, which AMC was obliged to defeat in order to recover treble damages.

The Court finds little merit in this contention. Evidence concerning losses at AMC's Saratoga and Oakridge theatres constituted but a portion of the evidence adduced at trial, albeit a significant portion. Considerably more evidence was presented concerning theatres in entirely different geographic and/or product markets. Furthermore, the evidence adduced at trial only partially reflects the amount of discovery and pretrial work completed to prepare the claim and the counterclaim for trial; the greater portion of defendants' fee request goes to such pretrial preparation. Further still, defendants concede that some fees were incurred solely in defense of the complaint, belying any notion that the complaint was merely the "flipside" of the counterclaim. In short, defendants argument proves no more than that there was *some* degree of overlap between the claim and counterclaim, a proposition readily admitted by Syufy herein. Defendants fail, however, to demonstrate to the satisfaction of the Court that the claim and counterclaim overlapped *entirely*, or to such an extent that defendants could not have prevailed on the counterclaim without success-

fully defending the allegations of the complaint.

Defendants also argue that, in order to prevail on their counterclaim, they were forced to overcome repeated inflamatory allegations of illegal conduct on their part asserted during Syufy's case-in-chief, which allegations cast them in a bad light before the jury.[6] They submit that defense counsel reasonably undertook to resist these allegations (*i.e.*, defend the complaint) in order to promote their interest in recovering damages on the counterclaim. They rely on *Twin Cities Sport-Service, supra,* 676 F.2d at 1313, wherein the Ninth Circuit held that successful plaintiffs in a private antitrust action under some circumstances may recover attorney's fees for prosecuting claims on which they did not prevail:

> "[W]e believe that a prevailing antitrust plaintiff is entitled to recover a reasonable attorney's fee for every item of service which, at the time rendered, would have been undertaken by a reasonable and prudent lawyer to advance or protect his client's interest in the pursuit of a successful recovery of antitrust damages."

*See also Moore v. James H. Mathews & Co., supra,* 682 F.2d at 839.

Defendants' argument proves too much, for it would apply in any private antitrust action wherein the plaintiff (defendants herein) is sued on a counterclaim (complaint herein), regardless of the nature of the counterclaim or its relationship to the antitrust allegations in the complaint. All counterclaims charge the plaintiff(s) with illegal conduct and thus cast him (or them) in a bad light before the jury; by defendants' reasoning, prevailing antitrust plaintiffs would be entitled to recover attorney's fees for defendant counterclaims entirely unrelated to their statutory entitlement to

---

**6.** Defendants refer particularly to claims by Syufy that their president, Stanley Durwood, viewed himself as the "head gorilla" in a fledgling nationwide theatre cooperative; that Durwood's personal diary was the analogue to *Mein*

*Kampf;* that defendants were engaged in a "nationwide conspiracy"; that they utilized "fraudulent" bidding to obtain monopolistic advantage; that they were funded by a "National

antitrust damages.[7] Neither the statute nor *Twin City Sportservice* support such a broad proposition. Section 4 of the Clayton Act is specially limited: attorney's fees under its provisions are *incidental* to the *statutory right* to antitrust damages. *Twin City Sportservice, supra,* 676 F.2d at 1314. *Twin City Sportservice* sanctioned the award of fees only for the prosecution of unsuccessful claims that nonetheless were directed toward plaintiff's statutory entitlement to damages. *Id.* at 1313.

■ *Independence Tube Corp. v. Copperweld Corp.,* 543 F.Supp. 706 (N.D.Ill. 1982), aptly illustrates the limited circumstances under which a prevailing antitrust claimant properly may recover attorney's fees for services undertaken to defeat his opponent's counterclaim. In *Independence Tube,* plaintiff sued several steel tubing manufacturers under Section 1 of the Sherman Act, alleging that they conspired to bar its entry into the structural steel tubing market. Defendants countersued plaintiff and its presiding officer for allegedly soliciting and hiring away one defendant's employees in order to acquire that defendant's trade secrets. On its subsequent application for attorney's fees, the court held that plaintiff was entitled to fees for services undertaken in connection with the counterclaim.

"The defendants' counterclaim against Grohne [plaintiff's presiding officer] and the plaintiff was identical to their *defense* against the plaintiff's section 1 claim: the defendants argued that Grohne's alleged use of trade secrets and indicement of employees both made him liable to the defendants under state law and *justified* their activities which the plaintiff was claiming violated section 1,

*thus relieving them from liability under the antitrust laws.* Even if plaintiff had not had to defend the counterclaim, the plaintiff's attorneys would have had to perform the same services to counter the defendants' *defense* to the section 1 claim. Therefore, time spent on the counterclaim is also compensable."

543 F.Supp. at 712 (emphasis added). Thus, where the counterclaim constitutes an independent legal defense to plaintiff's claims, potentially relieving defendant of any liability under the antitrust laws, the successful antitrust plaintiff is entitled to attorney's fees for defeating that counterclaim. Clearly, under such circumstances, services undertaken to defeat the counterclaim are "incidental to the statutory right to [antitrust] damages," *Twin City Sportservices, supra,* 676 F.2d at 1313; plaintiff could not establish his legal (as contrasted to moral) right to damages without successfully defending the counterclaim.

The services undertaken by defense counsel herein to defeat Syufy's allegations were not incidental to AMC's statutory right to recover antitrust damages. Syufy's allegations did not state a legally sufficient defense to AMC's counterclaim, potentially relieving Syufy of any antitrust liability—AMC was entitled to recover treble damages from Syufy notwithstanding its own alleged illicit conduct. *Perma Life Mufflers v. International Parts Corp.,* 392 U.S. 134, 88 S.Ct. 1981, 20 L.Ed.2d 982 (1968).[8] Nor did Syufy's allegations state a factually sufficient defense to AMC's counterclaim, potentially relieving Syufy of antitrust liability. AMC could have recovered antitrust damages even if it had also been found to have monopolized or attempted to monopolize the film exhibition market in

Treasury" located in Kansas City (defendants' principal place of business).

**7.** Moreover, under such circumstances, antitrust defendants would file their counterclaims in separate lawsuits in order to avoid the risk of incurring their opponent's defense-related attorney's fees. To encourage such a practice would proliferate litigation and defeat the ends of judicial economy currently served by the counterclaim device.

**8.** Thus, had AMC filed its counterclaim in a separate lawsuit (*i.e.,* had there been no complaint to defend), defense counsel would *not* have had to perform the same legal services in order to prevail; Syufy's claims, asserted defensively, would have been inadmissible in a separate lawsuit for law of relevance under the *Perma Life* rule. *Cf. Independence Tube Corp. v. Copperweld Corp.,* 543 F.Supp. 706, 712 (N.D.Ill. 1982) *quoted* at page 1471, *supra.*

San Jose. As discussed above, the factual allegations of the complaint and counterclaim were not mutually exclusive.

Accordingly, defendants were not obliged, on the law or the facts of this case, to defeat plaintiff's claim in order to prevail on the counterclaim.

**B**

Defendants argue in the alternative that Syufy's complaint constituted "vexatious litigation" in defense of which the prevailing defendant is entitled to recover his attorney's fees.

 Ordinarily, in the absence of a statute or enforceable contract to the contrary, the prevailing litigant is not entitled to collect attorney's fees from his opponent. *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 257–60, 95 S.Ct. 1612, 1621–23, 44 L.Ed.2d 141 (1975); *Dogherra v. Safeway Stores, Inc.,* 679 F.2d 1293, 1298 (9th Cir.1982); *United States v. Standard Oil of California,* 603 F.2d 100, 103 (9th Cir.1979) (hereinafter cited as "SOCAL"). Under one exception to this rule, however, attorney's fees may be awarded to a successful party when his opponent has acted "in bad faith, vexatiously, wantonly or for oppressive reasons * * *." *F.D. Rich Co. v. Industrial Lumber Co.,* 417 U.S. 116, 129, 94 S.Ct. 2157, 2165, 40 L.Ed.2d 703 (1974); *Dogherra, supra; SOCAL, supra.* The award of fees in such situations is punitive, and the penalty can be imposed only in exceptional cases and for dominating reasons of justice. *Dogherra, supra; SOCAL, supra;* 6 J. Moore *Federal Practice* ¶ 54.77[2] at 1709–10 (2d ed. 1972). One should not be penalized for merely defending or prosecuting a lawsuit. *F.D. Rich, supra.* In litigation between strangers—parties unrelated by contract or fiduciary ties—the essential element triggering the award of fees is the existence of "bad faith" on the part of the unsuccessful litigant. *Hall v. Cole,* 412 U.S. 1, 5, 93 S.Ct. 1943, 1946, 36 L.Ed.2d 702 (1973); *SOCAL, supra,* 603 F.2d at 103–04. The standards for finding bad faith are necessarily stringent. *Lipsig v. National Student Marketing Corp.,* 663 F.2d 178, 180 (D.C.Cir.1980). The mere fact that a party is unsuccessful on its claims does not warrant a finding of bad faith. *Runyon v. McCrary,* 427 U.S. 160, 183–84, 96 S.Ct. 2586, 2600–01, 49 L.Ed.2d 415 (1976); *Miracle Mile Ass'n v. City of Rochester,* 617 F.2d 18, 21 (2d Cir.1980).

 Defendants fail to demonstrate that this case falls within the "bad faith" principles cited above. Plaintiff's claims clearly were not so lacking in merit as to constitute an abuse of the processes of the court. *See SOCAL, supra,* 603 F.2d at 104. To the contrary, this Court finds from the evidence presented at trial that there was substantial merit in a number of plaintiff's allegations. *See Lipsig, supra,* 663 F.2d at 182 ("[T]he presence of merit in a claim or defense may well negate any notion of bad faith in its filing * * *." (Emphasis omitted.)) Nor was there any lack of diligence or earnestness on plaintiff's part in the prosecution of its claims. *Cf. Id.* at 181 (fee award against unsuccessful counterclaimants upheld where they had engaged in dilatory tactics during extensive discovery and courtroom hearings). Plaintiff completed extensive discovery, amassed a prodigious amount of evidence, thoroughly briefed and argued several complex pretrial motions (including three partial summary judgment motions), and exhaustively prepared its case for trial, in a little more than two years, a relatively brief period for a case of this magnitude and complexity. At no time during the course of this litigation did it appear to the Court that plaintiff sought any more or any less from this litigation than full and complete recovery for its purported antitrust injury. Accordingly, the Court finds that plaintiff's suit was not "vexatious" or "sham" litigation in defense of which defendants are entitled to recover their attorneys' fees.

## C

The Court finds, for the reasons set forth in the preceding two subsections, that it cannot avoid determining the proper allocation of defense counsel's time between the complaint and counterclaim. Unfortunately, the Court must make this determination in a complete vacuum, in the absence of any firm factual showing by either party to support or to contest the figures propounded by defendants herein. The Court could simply deny the defendants attorneys' fees altogether for counsel's failure to maintain adequate time records, but such a ruling clearly would lead to inequitable results, depriving defendants of a portion of their treble damage recovery (contrary to the purpose of Section 4), depriving counsel of even nominal compensation for services manifestly valuable, and bestowing upon plaintiff a windfall. With all deference due the integrity of defense counsel, the Court cannot attribute much weight to the entirely speculative estimates set forth in their declarations—the temptation to recollect in a fashion most favorable to their clients is too great.

▇▇ Accordingly, the Court has thoroughly reviewed the record of this case and based thereon, and on its independent recollection of events occurring at pretrial hearings and at trial, it conservatively estimates that sixty percent of defense counsel's pretrial and trial services were devoted at least in part to the prosecution of the counterclaim. This estimate is necessarily rough, because defense counsel failed to maintain adequate time records, and necessarily conservative, in order to prevent defendants from reaping a windfall from their counsel's omission. Defendants, of course, bear the burden of proving their entitlement to fees, and the uncertainty arising from counsel's inadequate time

records has been resolved against them. See In re Capital Underwriters Securities Litigation, supra, 519 F.Supp. at 102 and cases cited therein.

## II

▇▇ The Court will now proceed to determine an appropriate fee award according to the analyses described at the outset of this Memorandum Opinion and Order. First, an appropriate "lodestar" figure will be determined for each of defendants' counsel. Then these lodestar figures will be examined in light of the Kerr factors.

## A

The lodestar figures for the Parkinson and Hackett firms are easily calculated, in view of a number of concessions made by plaintiff. Plaintiff concedes the reasonableness of the total number of hours expended by the Parkinson and Hackett firms on both the claim and counterclaim, and the reasonableness of the hourly billing rates charged by these firms. Plaintiff also agrees that all hours expended after January 8, 1982, the day the jury returned its verdicts, are attributable to the counterclaim. Plaintiff disputes only the number of hours allocated to the counterclaim prior to that date. This Court has determined, as discussed above, that sixty percent of the time charged prior to January 8, 1982, is attributable to the counterclaim.

Benjamin H. Parkinson and William F. Campbell of the Parkinson firm, who served as local counsel for defendants, have filed time records documenting 376.91 hours of service on this case.[9] Their hourly billing rate was $100 per hour from the commencement of the suit until April 30,

---

9. Mr. Parkinson attests at page 5 of his declaration that his firm expended a total of 287.16 hours of service on this case from its commencement until August 9, 1982. His time records, however, document a total time expenditure of 333.56 hours for that period. The Court has utilized the figure verified in his time records to calculate the lodestar figure.

During oral argument, a question was raised as to whether time expended by defense counsel to prepare the instant fee application is compensable under Section 4 of the Clayton Act. The Court has determined that such time is compensable. See Perkins v. Standard Oil Co. of California, 474 F.2d 549, 554 (9th Cir.1973); Rosenfeld v. Southern Pacific Co., 519 F.2d 527, 530 (9th Cir.1975).

1980, and $125 per hour thereafter. These figures, adjusted to reflect the amount of fees found by the court to be attributable to the counterclaim, would yield a lodestar total as follows:

| Date | Hours Claimed | Hours Attributed to Counterclaim | Billing Rate | Total |
|------|------|------|------|------|
| 10/31/79–4/30/83 | 10.25 | 60% | $100/hr. | $ 615.00 |
| 5/1/80–1/8/82 | 277.61 | 60% | 125/hr. | 20,820.75 |
| 1/8/82–10/15/82 | 89.05 | 100% | 125/hr. | 11,131.25 |
| | | | | $32,567.00 |

This lodestar total must be reduced in one respect. Mr. Parkinson claims $375 in fees for services that, as of October 7, 1982, he estimated he *would* provide at a later date. This request is speculative and does not properly support an award of fees. Therefore, the Parkinson firm lodestar has been reduced to $32,192.

Robert C. Hackett and other members of his firm, who served as lead counsel for defendants, have submitted time records documenting 6396.20 hours of service during this litigation. The hourly billing rate charged by the Hackett firm during the litigation varied from $80 to $120 per hour for partners, $60 to $80 per hour for associates, $50 per hour for law clerks, and $30 to $40 per hour for paralegal staff. These figures, adjusted to reflect the amount of fees found by the Court to be attributable to the counterclaim, would yield a lodestar total as follows:

| Date | Fees Claimed | Hours Attributed to Counterclaim | Total |
|------|------|------|------|
| 10/31/79–1/8/82 | $386,083.00 | 60% | $231,649.80 |
| 1/8/82–10/15/82 | 98,390.50 | 100% | 98,390.50 |
| | | | $330,040.30 |

The Court finds, however, that this lodestar total must be reduced in several respects. First, the Hackett firm claims $1,683 in fees for services performed from June 15, 1982, until October 7, 1982, with respect to defendants' claim for injunctive relief. The allowance of attorneys' fees, as authorized by Section 4 of the Clayton Act, is incidental to the statutory right to damages. *Twin City Sportservice, supra,* 676 F.2d at 1313. Time devoted to the request for injunctive relief must be excluded. *Id.* at 1314, 1316. Second, the Hackett firm claims $2,652.50 in fees for services related to the appeal of this case to the Ninth Circuit, which appeal was dismissed without prejudice. Because defendants have not yet prevailed on the merits in the appellate court, this request for fees is premature. Third, the Hackett firm claims $4,500 in fees for services that, as of October 7, 1982, attorneys therein estimated that they would provide at a later date. This request is speculative and does not provide a sufficient basis for an award of attorneys' fees. Accordingly, the above lodestar figure has been reduced by these amounts in the following manner:

| | |
|------|------|
| Initial lodestar total | $330,040.30 |
| Claim re injunctive relief | –1,683.00 |
| Claim re appeal | –2,652.50 |
| Claim re post-10/7/82 services | –4,500.00 |
| | $321,204.80 |

Plaintiff disputes all of the hours expended by defendants' general corporate counsel, Alan K. Benjamin, and his associates. Plaintiff provides no basis for its objection other than an observation that three law firms and twelve lawyers worked on defendants' case, giving rise to a suggestion of overkill. Defense counsel properly note that three of defendants' attorneys expended negligible amounts of time on the case, and that plaintiff itself employed a number of attorneys to prosecute its claim. The implication arising from plaintiff's objection is that the duties performed by Mr. Benjamin, essentially document review and client liaison work, were unnecessary or duplicative of the work of other attorneys. Plaintiff offers no proof to support these allegations or to controvert the facts set forth in Mr. Benjamin's declaration. Plaintiff fails to indicate which services performed by Mr. Benjamin duplicated the efforts of others or why his services, and not those of the other attorneys also, are al-

leged to be duplicative. In short, plaintiff has made *no* showing that would support the wholesale exclusion of Mr. Benjamin's time from the fee award.

The Court finds that Mr. Benjamin and his associates performed valuable services for defendants by: conferring with co-counsel and witnesses, recruiting a key expert witness, Maurice Silverman, to testify in defendants' behalf, and keeping defendants apprised of the status of the litigation. The Court, however, will reduce the hours documented by Mr. Benjamin for appearances before the Court, except for the hours spent at the pretrial conferences and at trial; defendants need not have been represented at the other hearings by more than one attorney.

Mr. Benjamin has submitted time records documenting 1030 hours of service on this case. His hourly billing rate during this litigation varied between $100 per hour and $124 per hour.[10] These figures, adjusted to reflect the amount of fees found by the Court to be attributable to the counterclaim, would yield a lodestar total as follows:

| Date | Hours Claimed | Hours Attributed to Counterclaim | Billing Rate | Total |
|---|---|---|---|---|
| 10/31/79– 12/31/80 | 147.00 | 60% | $100/hr. | $ 8,820.00 |
| 1/1/81–5/ 31/81 | 367.00 | 60% | 115/hr. | 25,323.00 |
| 6/1/81– 1/8/82 | 333.75 | 60% | 116/hr. | 23,229.00 |
| 1/9/82– 10/15/82 | 182.25 | 100% | 50/hr. 116/hr. 124/hr. | 18,078.00 |
| | | | | $75,450.00 |

This lodestar total must be reduced by the number of hours spent on courtroom appearances other than pretrial conferences and trial. (The Court estimates that approximately 7 of the 10.5 hours documented for court appearances during November 1982 were spent on the November 20 and 30 pretrial conferences.) The lodestar total also must be reduced by the hours Mr. Benjamin claimed, as of October 7, 1982, would be spent on services to be performed thereafter. As stated above with respect to the Parkinson and Hackett firms, such a request is speculative and does not provide a sufficient basis for an award of attorneys' fees. Accordingly, the lodestar figure has been reduced by these hours as follows:

| Item | Hours × Allocation × Rate | | Total |
|---|---|---|---|
| Initial Lodestar | | | $75,450.00 |
| Court Appearances: | | | |
| 10/31/79–12/31/80 | 8.0 hrs. × 60% × $100/hr. | — | 480.00 |
| 1/1/81–5/31/81 | 3.0 hrs. × 60% × $115/hr. | — | 207.00 |
| 6/1/81–1/8/82 | 3.5 hrs. × 60% × $116/hr. | — | 243.60 |
| 1/9/82–10/7/82 | 12.0 hrs. × 100% × $116/hr. | — | 1,392.00 |
| Prospective Services: | | | |
| 10/7/82– | 12.0 hrs. × 100% × $124/hr. | — | 1,488.00 |
| | | | $73,127.40 |

**B**

The above calculations yield a total lodestar figure of $422,780.80 for the services of all counsel. The Court now must determine under the *Kerr* factors whether this figure should be adjusted upward or downward to reflect the quality of the advocacy and/or the significance of the result obtained in this case.

The Court has thoroughly considered the twelve factors outlined in *Kerr* and finds that none of these factors justifies enhancement of the lodestar figure by a "positive" multiplier. Three of the factors (time and labor required, customary fee, and the experience, reputation, and ability of counsel) already have been considered above and reflected in the lodestar amount.

---

**10.** Mr. Benjamin reduced his customary billing rate to $50 per hour for services undertaken in connection with the instant application for attorneys' fees.

Defendants compensated their counsel under a fixed hourly rate fee arrangement; consequently, the lodestar figure is not subject to enhancement for the contingent nature of counsel's compensation, nor for the preclusive effect the services performed herein had on other fee generating employment.

This case proceeded along settled principles of antitrust law; the legal issues presented were not so novel as to warrant an upward adjustment of the lodestar total. The case did at times present complex and difficult factual issues. However, the unadjusted lodestar figure compensates counsel for a substantial number of hours, which hours adequately reflect the factual complexity of the lawsuit.

Of all the *Kerr* factors, the skill required of defense counsel to perform their services properly and the results obtained militate most strongly in favor of a positive lodestar adjustment. Defense counsel clearly accomplished a great deal in this litigation, recovering in excess of $3,000,000 in antitrust damages from the party that initiated the lawsuit, while exonerating their clients of any antitrust liability. Nevertheless, the lodestar multiplier is designed to reward unusual or extraordinary skill. *Lindy, supra,* 540 F.2d at 118. This Court finds, from its examination of briefs and memoranda submitted by defense counsel throughout the litigation and from counsel's appearances before the Court, that counsel's efforts, though clearly excellent, did not rise to the level of exceptional skill justifying an increase in the lodestar total.

To the extent that the length and nature of counsel's professional relationship with defendants has any bearing on the fee determination herein, it militates against enhancement of the lodestar figure. Messrs. Benjamin and Hackett have represented defendants for twenty-three years and nine years respectively, and thus were accustomed to defendants' business operations, legal needs, and personnel prior to representing defendants in this lawsuit. Though Mr. Parkinson and his firm had no relationship with defendants prior to this suit, his involvement in the litigation was limited relative to the involvement of the other counsel.

Defendants concede that the "undesirability" factor set forth in *Kerr* does not apply in this case. The Court is unaware of any time constraints imposed on defense counsel by their clients that would warrant an increase in the lodestar figure. Finally, the Court finds that the unadjusted lodestar figure compares favorably with fee awards in similar cases. *See, e.g., Wall Products Co. v. National Gypsum Co.,* 367 F.Supp. 972 (N.D.Cal.1973).

As indicated above, defense counsel displayed excellent (though not exceptional) skills of advocacy in prosecuting and defending this lawsuit to a successful conclusion. Accordingly, a negative lodestar adjustment is unwarranted. Plaintiff does not argue otherwise.

### III

For the reasons set forth above, the Court finds that defendants are entitled to recover a reasonable attorneys' fee of $422,780.80 for the services of their counsel in this litigation. Accordingly,

IT IS HEREBY ORDERED that plaintiff, Syufy Enterprises, shall pay to defendants American Multicinema and its related entities reasonable attorneys' fees in the amount of $425,103.40.