963 F.2d 378
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
CONTINENTAL INSURANCE, Plaintiff-Appellee,
v.
BROADBENT MERCANTILE INC. Defendant-Appellant
 No. 90-55864.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Oct. 10, 1991.
Decided May 28, 1992.
 
 Before FLETCHER, D.W. NELSON and BRUNETTI, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Continental Insurance Company (Continental) sought a declaratory injunction that it had no duty to pay for the defense or indemnify its insured, Broadbent Mercantile, Inc. (Broadbent), against a third party action that had been filed against Broadbent. The district court granted the declaratory judgment and ordered Broadbent to pay attorneys' fees. Broadbent appealed the award of attorneys' fees. We reverse.
 
 FACTS AND PROCEEDINGS BELOW:
 
 3
 Broadbent hauls freight as a common carrier. On September 5, 1986, Broadbent picked up a load of copper tubing from Hamilton Copper and Steel Corporation (Hamilton) for shipment from Gardena, California to Las Vegas, Nevada. Instead of shipping the tubing to Las Vegas, however, Broadbent stored the tubing in Long Beach, California. The reason Broadbent stored the tubing, rather than shipping it to Las Vegas, is disputed. Broadbent states that a business dispute relating to the payment of freight charges ensued between Hamilton and Broadbent, whereas Continental alleges that Broadbent's President and owner, Vidma Willson, desired to extort money from Hamilton. It is not disputed that Willson contacted Hamilton's President, Jim Harris, and informed him that Hamilton owed Broadbent money due to the alleged business dispute. Harris, in turn, called the Los Angeles Sheriff's Department. The Sheriff assigned to investigate the charge testified that Willson told him the tubing was in Las Vegas, not Long Beach.
 
 
 4
 While the negotiations were ongoing, the truck containing the copper tubing disappeared from the Long Beach terminal. Broadbent reported the loss to Continental on September 22, 1986. The truck was recovered in early October in Buena Park, California, but the copper tubing was missing. By letter, dated January 29, 1987, Continental notified Broadbent that the insurance policy did not provide coverage for the tubing because the loaded trailer "was not attended or in transit at the time of the theft."
 
 
 5
 Aetna Casualty and Insurance Company (Aetna) paid Hamilton for its loss under its insurance policy. On June 6, 1988, Aetna sued Broadbent for subrogation to recover damages for breach of contract, fraud, conversion, restitution, and negligence (Third Party Action). On June 16, 1988, Willson requested Continental to undertake the defense of the Third Party Action. In a letter dated July 7, 1988, Continental offered to pay Broadbent's attorneys' fees and costs for the Third Party Action, but reserved its rights and denied any duty to defend or indemnify. On July 8, 1988, Continental filed a Complaint and Amended Complaint for Declaratory Relief declaring it had no duty to defend or indemnify Broadbent in the Third Party Action. It also sought attorneys' fees and costs.
 
 
 6
 At some date not given in the record, but after the case at hand went to trial and before the Third Party Action went to trial, Willson was charged with grand theft of property and attempted extortion in connection with the loss of the copper tubing. Willson pled no contest to a misdemeanor charge and was ordered to pay restitution to Aetna.[1]
 
 
 7
 The trial commenced. The jury found, by way of special verdict, that Broadbent's loss was not covered by the insurance policy and that the loss was caused by Willson's "willful conduct." The district court subsequently entered a Judgment on Special Verdict declaring that Continental had no duty to defend or indemnify Broadbent and awarding Continental attorneys' fees and costs.
 
 DISCUSSION:
 
 8
 I. Timeliness of Appeal.
 
 
 9
 The Judgment on Special Verdict filed on April 10, 1990 granted Continental its motion for attorneys' fees. The Order declaring the amount of fees awarded was filed on June 5, 1990. Broadbent filed its appeal on June 29, 1990. The claim for attorneys' fees is collateral to the main action and the order granting the fees did not become final until the exact amount of the fee award was determined. See Budinich v. Becton Dickinson and Co., 486 U.S. 196, 202 (1988). The appeal is timely.
 
 
 10
 II. Award of Attorneys' fees.
 
 
 11
 A. Standard of Review.
 
 
 12
 The district court's interpretation of the judicial exceptions to the American Rule, which ordinarily precludes an award of attorneys' fees, is a legal question subject to de novo review. Perry v. O'Donnell, 759 F.2d 702, 704 (9th Cir.1985). If the district court applied the correct legal standard, however, its decisions regarding whether to award fees and the amount of the fees to be awarded are reviewed for an abuse of discretion. Id.
 
 
 13
 It is well-settled under the American Rule that a party generally may not recover attorneys' fees absent statutory authorization or a contract providing for an award. Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 257 (1975). However, a court may assess attorneys' fees when the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons. Alyeska, 421 U.S. at 258-59.
 
 
 14
 Broadbent argues that the district court awarded the attorneys' fees based on "willful conduct," an incorrect standard. We agree. The Judgment On Special Verdict stated that "whereas the jury found that Defendant's willful conduct caused the loss, and whereas entitlement to attorney fees was one agreed issue to be tried, that plaintiff is entitled to recovery of its attorney fees as well as its costs of action." (Emphasis added). During pre-trial discussion, the district judge told counsel for Continental that "[i]f you prove willful misconduct on the part of Mr. Banks' clients [Broadbent], then you would be entitled to attorneys' fees." (Emphasis added.) Further, the district court made no findings as to Broadbent's bad faith; in fact, the district judge expressly forbade either party from discussing good or bad faith in front of the jury. Continental argues that the district judge's reference in his final Order to Continental's Points and Authorities, which requested attorneys' fees based on the "bad faith" of Broadbent, evidences the use of the proper standard. This indirect reference made in the final Order merely amounts to an exact calculation of an award already granted. It does not appear to evidence the correct standard.
 
 
 15
 Because the district court in awarding attorneys' fees improperly found that the willful misconduct of Broadbent came within the judicial exceptions to the American Rule, the award is subject to de novo review.
 
 
 16
 B. Award of Attorneys' Fees.
 
 
 17
 An award of attorneys' fees for bad faith "is punitive and the penalty can be imposed 'only in exceptional cases and for dominating reasons of justice.' " United States v. Standard Oil Co. of Cal., 603 F.2d 100, 103 (9th Cir.1979) (quoting 6 J. Moore, Moore's Federal Practice p 54.77 (2d ed. 1972)). Bad faith may be found in the actions that led to the lawsuit as well as in the conduct of the litigation. Dogherra v. Safeway Stores, Inc., 679 F.2d 1293, 1298 (9th Cir.), cert. denied, 459 U.S. 990 (1982) (quoting Hall v. Cole, 412 U.S. 1, 15 (1973)).
 
 
 18
 The only bad faith on the part of Broadbent during the declaratory action that Continental points to is Broadbent's action of defending itself. Continental argues that the only issue at trial was the duty to defend and indemnify and that the issue was predetermined by the California Insurance Code section 533.5, which forbids indemnification for restitution.[2] Thus Broadbent's demand for a jury trial, Continental argues, was made in bad faith because Broadbent had "no 'defense.' " Contrary to Continental's insistence, however, the availability of indemnification for restitution was not the only issue at trial. As evidenced by the Pre-Trial Conference Order, six issues of fact were to be litigated at trial:
 
 
 19
 whether the load was in due course of transit at the time of loss; whether the fenced yard at L & L Tank Lines is a "locked private garage; whether timely notice was given, and whether Continental was prejudiced if the notice was not timely; whether the loss occurred by the willful misconduct of Broadbent or its owner; and whether Continental has a duty to defend and indemnify in the Third Party Action. Although whether there is a duty to defend and indemnify is not a question for the jury, the factual issues of whether the insurance policy covered the loss are questions for the jury. The jury could have found that the copper tubing was covered by the insurance policy. Presumedly, at that point the district judge would have determined whether Continental had the duty to defend the Third Party Action and indemnify Broadbent. It would be up to the district court in the Third Party Action to determine the effect, if any, of Willson's no contest plea on the criminal misdemeanor and California Insurance Code section 533.5.
 
 
 20
 Continental argues another rationale for the award of attorneys' fees. It argues that Willson's "criminal conduct" caused the loss of the copper tubing and that this conduct amounted to bad faith. Under Ninth Circuit precedent, actions leading up to the lawsuit can justify the award of attorneys' fees. Dogherra, 679 F.2d at 1298. If Willson had told the Los Angeles Sheriff's Department that the tubing was in Long Beach instead of Las Vegas, Continental argues, the Sheriff's Department could have prevented the loss. This hypothesis is unsupported, however. The jury found "willful conduct" on the part of Willson, not criminal conduct. We are not prepared to hold that "willful conduct" or "willful misconduct" is tantamount to "bad faith." If we found that every "bad act" by an insured against a third party justified an award to the insurance company of attorneys' fees, the American Rule would become the exception rather than the rule in insurance cases.
 
 
 21
 Further, it must be noted that Continental brought the declaratory action. Although Broadbent did ask Continental to undertake the defense in the Third Party Action, it had not billed Continental for its attorneys' fees and costs as of the time for oral argument in this appeal. It seems disingenuous for Continental to argue at this stage of the proceedings that there was nothing to be gained from a jury trial. Both parties were asked by the district court at the opening of the Pre-Trial Conference whether they had settled the case. Counsel for Continental admitted that there still were "questions of coverage and further exposure that make it [settlement] difficult, and also there's questions of law that are involved." Thus it appears that there were issues to be resolved and the litigation was not defended in bad faith.
 
 
 22
 The award of attorneys' fees is the exception rather than the rule. We decline to expand the American Rule to encompass acts like those engaged in by Broadbent.
 
 
 23
 As Continental has not prevailed, its motion for attorneys' fees on appeal is denied.
 
 
 24
 REVERSED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Circuit Rule 36-3
 
 
 [1]
 These facts were stipulated without prejudice to any evidentiary objection in the Pre-Trial Conference Order. A Motion in Limine prevented either party from discussing the criminal investigation or trial before the jury
 
 
 [2]
 Section 533.5 prohibits an insurance company from defending, indemnifying, or providing restitution for an insured in a criminal proceeding